**EMMA R. BEAUCHAMP, Individually and as Guardian of James Marvin Beauchamp,**

v.

**Lee RUSSELL and Mac Valves, Inc.**

**Civ. A. No. C80–1844A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 13, 1982.

Baxter H. Finch and A. Russell Blank, Atlanta, Ga., for plaintiff.

Allan C. Watkins, Tampa, Fla., for Russell.

B. Holland Pritchard, Atlanta, Ga., for Mac Valves.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff Emma Beauchamp, individually and as guardian of her husband, James Beauchamp, brings this diversity action to recover damages for personal injuries suffered by James Beauchamp as a result of an industrial accident occurring at his place of employment, Allied Foods, Inc. (hereinafter "Allied"). The case is presently before the court on the motion of the defendant Mac Valves, Inc. (hereinafter "Mac Valves"), for summary judgment, Rule 56, Fed.R.Civ.P., and for bifurcation of the trial of the issues of liability and damages, Rule 42(b), Fed.R. Civ.P., and the plaintiff's opposition thereto.

### I. *Factual Background*

In May 1977, a Model BH2 automatic palletizer, designed and manufactured by Russell Machine & Conveyor Company (hereinafter "Russell Machine") of Tampa, Florida, and purchased by Allied, was installed in Allied's Atlanta, Georgia, pet food plant. The palletizer is a casestacker. According to the defendant Mac Valves, it functions in the following manner.

Boxes of canned products enter the machine on a roller conveyor which introduces them to a platform at the top of the machine. The cases are automatically stacked and a sweeping device posi-

tions the boxes onto two steel plates. When the stacking sequence has been completed, five layers of nine cases per layer rest on the two steel plates. The automatic sequence then causes the two plates to be pulled apart so as to allow the configured stack of cartons to drop down below the moveable plates onto a waiting pallet, which is lowered by elevator hoist to the bottom of the palletizer and carried away from the machine by a roller conveyor. The plates then automatically move to their closed position. When in their closed mode, the plates are not tightly closed, but are separated by a distance of four to five inches. A fresh pallet is then placed beneath the plates in a raised position in the elevator hoist and the process is repeated.

Brief in Support of Defendant's Motion for Summary Judgment (hereinafter "Defendant's Brief") at 4–5. When installed in Allied's local plant, the palletizer had two warning signs affixed to it by Russell Machine. Deposition of E. Russell at 42–45. The sign located in the hoist area stated "Danger—Keep Out." The sign located on the palletizer's side stated "Danger—This Machine Starts Automatically."

The steel plate assembly is energized pneumatically by a two-position, four-way air valve, Model No. 571E–01–25 (hereinafter "air valve"), which is manufactured by Mac Valves. Defendant's Brief at 5. That valve was installed on the BH2 palletizer, and air hoses were attached to it, by a pneumatic expert employed by Russell Machine prior to the palletizer's shipment and installation at Allied. Deposition of L. Russell, dated December 16, 1981, at 35–36. The plates' operational cycle takes several seconds to be completed. Deposition of D. Brown at 13. When the palletizer is de-energized or in a neutral position, the two plates are in a closed position. *Id.* at 31; Deposition of E. Russell at 138.

Russell Machine first manufactured the palletizer in 1969, using Lee Russell's design. Deposition of L. Russell, dated February 26, 1981, at 31. In determining what components to incorporate into the palletiz-

er, Lee Russell reviewed numerous suppliers' catalogs and ordered certain components, including the air valve, through a purchasing agent, who obtained the components from a distributor. *Id.* at 40. This valve was incorporated into the palletizer which was installed at Allied Foods. Apparently, no installation instructions accompanied the valve when it was delivered to Russell Machine. Deposition of L. Russell, dated December 16, 1981, at 14. Although a schematic diagram, indicating the direction of air flow through a particular valve, is generally attached to every valve manufactured by Mac Valves, *see* Defendant's Brief, Affidavit of J. Lawrence at ¶ 8, it is undisputed that no such schematic diagram is presently attached to the air valve at issue in this case. The record does not reveal whether a schematic diagram was affixed to the air valve when it was delivered to Russell Machine or when it was installed at Allied.

On the evening of August 19, 1978, the palletizer became obstructed when part of the chain assembly which drove one of the two steel plates jumped its track. Deposition of B.J. Wall at 25, 27. Whether the palletizer had previously become obstructed in the same manner is disputed. *Compare* Deposition of D. Heath at 19; Affidavit of J. Cook at ¶ 3; *with* Deposition of W. Smith at 16. In addition, whether James Beauchamp had been involved in unjamming the plate assembly on prior occasions is disputed. *Compare* Deposition of W. Pearson at 33–34, *with* Deposition of H. Patterson at 18–19; Affidavit of J. Cook at ¶ 3. On that evening, however, Beauchamp and several other employees attempted to unjam the palletizer.

Before attempting the repair, the electric current and air power connected to the palletizer were closed down. Deposition of D. Heath at 22; Deposition of W. Smith at 11. However, no one attempted to bleed any compressed air out of the air valve Model No. 571E–01–25 or out of the air cylinder, both of which apparently drive the steel plates. While unjamming the machine, Beauchamp stood on the elevator

hoist with his head positioned between the two steel plates. He was apparently warned by a co-worker, Damon Heath, that the plates would close before he could get out. He replied that he could duck from beneath the plates before they closed. Deposition of D. Heath at 22; Deposition of W. Smith at 12–13, 30. Using a five-foot bar, Beauchamp was able to return the chain to its track, whereupon the plates immediately returned to a closed position. Beauchamp's head was caught between the plates, causing him to suffer permanent injuries.

On August 9, 1979, the plaintiff filed Civil Action No. C79–1469A in this district against Russell Machine, the designer and manufacturer of the palletizer. On October 19, 1979, a default judgment was entered against Russell Machine. After a jury trial on the issue of damages, judgment was entered for the plaintiff, as guardian of James Beauchamp, in the amount of $3,500,000, and for the plaintiff individually, in the amount of $500,000. Subsequently, Russell Machine was dissolved; its owner, Lee Russell, filed a voluntary petition in United States Bankruptcy Court for the Middle District of Florida.

On October 24, 1980, the plaintiff filed the instant lawsuit against Lee Russell, individually, and Allen-Bradley Company, Schrader-Bellow, Inc., and Harry P. Leu, Inc., all of whom manufactured various components of the palletizer. Plaintiff alleged that these manufacturers were liable under the law of negligence and strict liability for her husband's injuries.[1] Sever-al months later, on March 27, 1981, the plaintiff moved to amend her complaint to add Mac Valves as a co-defendant. Plaintiff claims that Mac Valves is liable due to its failure to provide adequate instructions with respect to the installation of the air valve and its failure to warn users of the air valve that the valve retains air pressure even when it is de-energized.[2] Thereafter, the plaintiff moved to voluntarily dismiss Allen-Bradley Company, Schrader-Bellow, Inc., and Harry P. Leu, Inc. The remaining defendants in the lawsuit are Lee Russell, who apparently has "been discharged in bankruptcy, so as to be excused from any further assessment of damages or from taking any action in regard to the pending lawsuit," and Mac Valves. Defendant's Brief, at 2.

## II. *Motion for Summary Judgment*

In its motion for summary judgment, Mac Valves contends that it cannot be found strictly liable because it is undisputed that the air valve was not defective in any respect and was not the proximate cause of James Beauchamp's injuries. Plaintiff vigorously argues that material issues of disputed fact exist, thereby precluding summary judgment.

### A. Whether the Air Valve Was Defective

In Georgia, the doctrine of strict liability is a creature of statute and common law. Ga.Code Ann. § 105–106[3] provides in pertinent part:

---

1. Plaintiff has withdrawn her negligence claims; she proceeds against the defendants, relying solely upon the doctrine of strict liability. *See* Pretrial Order, at 8.

2. In opposing Mac Valves' motion for summary judgment, the plaintiff asserts that the valve is defective due to the manufacturer's failure to provide proper packaging and instruction. In particular, the plaintiff contends that Mac Valves should have informed the user of the air valve that the valve could be installed so as to allow the steel plates to return to an open, rather than a closed, neutral position. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 4. In addition, the plaintiff appears to assert that Mac Valves is liable for failure to warn of the dangerous propensity of the valve. The court notes that these two theories are distinguishable. Instructions are not warnings; instructions, if followed, lead to a more efficient and safe use of a product but may not necessarily transfer information concerning risks of harm.

3. The Georgia legislature, in enacting section 105–106, did not adopt the *Restatement (Second) of Torts* § 402A. Unlike section 402A which imposes liability on anyone engaged in the business of selling a product with an unreasonably dangerous defect, section 105–106 imposes liability only on the manufacturer. In addition, section 105–106 requires that the product have been sold as new property and

[T]he manufacturer of any personal property sold as new property, either directly or through a dealer or any other person, shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained . . . .

The Georgia Supreme Court has interpreted this statute as imposing strict liability on manufacturers for "defective" products. *Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 S.E.2d 580 (1975). In reaching this conclusion, the *Parzini* court did not define the term "defect," but observed that a product is not in a defective condition "when it is safe for normal handling and consumption" and if it is "properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions . . . ." *Id.* at 869, 218 S.E.2d at 582. Moreover, the court expressly held that although a manufacturer is not liable for injuries that result from abnormal handling of a product, it must give adequate warning of any danger which might be anticipated from a particular use. *Id.* at 869, 218 S.E.2d at 582 (quoting *Restatement (Second) of Torts* § 402A, comment h (1965)).[4] Thus, a manufacturer's failure to warn[5] may give rise to strict liability where a product has been used in a manner contemplated and anticipated by the manufacturer.

Elaborating on the nature and scope of the duty to warn, the Georgia Court of Appeals, relying on comment h of the *Restatement (Second)* § 402A, recently held:

imposes liability only where the defect renders the product unmerchantable and unfit for the intended use. Finally, section 105–106 is more expansive than section 402A; the former extends liability to any natural person who may use, consume, or reasonably be affected by the property.

4. Comment h of section 402A of the *Restatement (Second)* states: "Where . . . [the seller] has reason to anticipate that danger may result

When the use to which a product was being put at the time of the injury is not that originally intended by the manufacturer, the determination of whether strict liability may be asserted as a viable theory of recovery or whether the manufacturer is insulated from liability because the use of the product was "abnormal" and intervening *depends,* initially, *upon the foreseeability that the product would be put to that use.*

*Talley v. City Tank Corp.,* 158 Ga.App. 130, 137, 279 S.E.2d 264, 271 (1981) (emphasis added). Because the product component at issue in *Talley* had been totally redesigned and replaced by the user, the court found that the manufacturer had no duty to warn. *Id.* at 137, 279 S.E.2d at 271–72.

■ Georgia courts have not had the occasion to address the precise question presented in the instant case: whether the manufacturer of a component part of a product will be strictly liable to a user of a product for failure to provide proper packaging and instructions or to warn of dangers attendant upon a foreseeable use of its part. In the absence of controlling state authority, this court must look to all available data and adopt the rule which it believes the Georgia Supreme Court would choose. *See Putnam v. Erie City Manufacturing Co.,* 338 F.2d 911, 917–18 (5th Cir. 1964).

Although the authors of the *Restatement (Second)* § 402A express no opinion on this question, comment q serves as a starting point for the court's analysis:

q. *Component parts.* . . . It is no doubt to be expected that where there is no change in the component part itself, but it is merely incorporated into something

from a particular use, . . . he may be required to give adequate warning of the danger . . . , and a product sold without such warning is in a defective condition."

5. The court's reference to a manufacturer's duty to warn includes a manufacturer's duty to provide proper packaging and instructions. *See Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 S.E.2d 580.

larger, the strict liability will be found to carry though to the ultimate user or consumer.

In accord with this comment, commentators have concluded that the theory of strict liability extends to the manufacturer of a component part of a product. L. Frummer and M. Friedman, 1 *Products Liability* § 9.01, at 188.1 (1960); W. Prosser, *Law of Torts* § 100, at 664 (4th ed. 1971). Moreover, a substantial number of courts which have considered this question have found that liability may run to the manufacturer of a component part. *See, e.g., Roy v. Star Chopper Co.,* 584 F.2d 1124, 1134 (1st Cir. 1978) (applying Rhode Island law), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Kuziw v. Lake Engineering Co.,* 586 F.2d 33, 35–36 (7th Cir. 1978) (applying Illinois law); *DeSantis v. Parker Feeders, Inc.,* 547 F.2d 357, 361 (7th Cir. 1976) (applying Wisconsin law); *Neofes v. Robertshaw Controls Co.,* 409 F.Supp. 1376 (S.D.Ind. 1976) (applying Indiana law); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *First National Bank v. Nor-Am Agricultural Products, Inc.,* 88 N.M. 74, 537 P.2d 682 (1975); *General Electric Co. v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972).

■ This rule appears to be well-reasoned and fair, particularly with respect to duty-to-warn cases. The responsibility for information collection and dissemination should rest on the party who has the greatest access to the information and who can make it available at the lowest cost.[6] Where a component part is incorporated into another product, without material change, the manufacturer of the part is in the best position to bear this responsibility.

■ In light of the foregoing authority, the court believes that the Georgia courts would adopt the rule that a manufacturer of a component part has a duty to warn of a danger that may result from a reasonably foreseeable use of its product. Although this rule imports the principle of foreseeability into the doctrine of strict liability, it is clear that duty-to-warn cases turn on the question whether a manufacturer should have foreseen a particular mode of use. *See* Kidwell, *The Duty to Warn: A Description of the Model of Decision,* 53 Tex.L.Rev. 1375, 1378–79 (1975); L. Frummer and M. Friedman, 1 *Products Liability* § 8.03[1].[7]

■ Foreseeability can be resolved as a legal issue by the court in clear cases. However, whenever there is doubt as to the foreseeability of a particular use, the question whether a manufacturer should have anticipated such a use is a question of fact. J. Dooley, *Modern Tort Law* § 32.79 (1977).

In support of its argument that it had no duty to warn, Mac Valves maintains that it had no knowledge or way of obtaining knowledge as to how the air valve would be utilized by Russell Machine in assembling the palletizer. Because the air valve is subject to innumerable potential uses, Mac Valves insists, it cannot feasibly be expected to develop a general set of installation instructions or warnings concerning the retention of compressed air in a pneumatic system. Moreover, Mac Valves urges, it was not reasonably foreseeable that the valve would be incorporated into a palletizer that was designed without safeguards for the release of compressed air.

■ The air valve is designed to drive pneumatically powered machinery. It appears that Russell Machine incorporated the valve into the palletizer without material change, to pneumatically drive the steel plates. Although Mac Valves claims that it was not reasonably foreseeable that the valve would be incorporated into a palletiz-

---

6. *See* Comment, Apportionment Between Partmakers and Assemblers in Strict Liability, 49 U.Chi.L.Rev. 544 (1982). This comment argues that in apportioning liability between a partmaker and an assembler, the cheapest cost avoider should bear full liability. "Under this approach, the factfinder should simply ask who can more easily detect and correct the defect.... [T]he party with the lowest detection costs would bear full liability, but could shift this liability to the party with the lowest correction costs if it provided a full warning of the detected dangers." *Id.* at 547.

7. In this respect, a duty-to-warn claim brought under the doctrine of strict liability is similar to a claim brought under a negligence theory.

er which did not have a mechanism for bleeding compressed air, the record on this issue is disputed. The valve was manufactured with a manual override button which apparently can be used to bleed compressed air pressure out of the valve. Apparently, no instructions relating to the use of the manual override button were given to Russell Machine. Indeed, although Mac Valves contends otherwise, Lee Russell has attested that the valve was not accompanied by any installation instructions or warnings when it was delivered to Russell Machine. Deposition of L. Russell, dated December 16, 1981 at 45. Moreover, the record substantiates that other valve manufacturers have developed a general set of installation instructions and warnings concerning the release of compressed air retained in a pneumatic system to guide the users of their valves. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Brief"), Affidavit of D. Brown, Exhs. A, B. Plaintiff's expert witness has testified that these instructions and warnings are applicable to all potential users of the valve. Defendant has adduced no evidence to the contrary. In light of these facts, the court concludes that the question whether Mac Valves had a duty to provide instructions and warnings to the users of the valve [8] and whether Mac Valves breached that duty is not appropriate for summary judgment.

Mac Valves also contends that even if a duty to warn exists, summary judgment in its behalf is warranted because James Beauchamp had actual knowledge of the danger he encountered, that is, he knew that the plates would close once he had gotten the chain back onto the track and released the jam. Plaintiff argues that this contention is not supported by the evidence.

■ Under Georgia law, a manufacturer is under no duty to warn of obvious common dangers connected with the use of a product. *Colson v. Allied Products Corp.,* 640 F.2d 5, 7 (5th Cir. 1981), *citing Hunt v. Harley-Davidson Motor Co.,* 147 Ga.App. 44, 248 S.E.2d 15 (1978). Nevertheless, it is not sufficient for a user to know of a general danger; the particular danger lurking in the product must or should have been known and appreciated by the user. *See* L. Frummer and M. Friedman, 1 *Products Liability* § 8.04.

■ In the instant case, the issue whether James Beauchamp knew that the steel plates returned to a closed position or that the palletizer retained compressed air while it was de-energized is controverted. Mac Valves submits that this danger was open and obvious to all Allied personnel. *See* Deposition of M. Wilkerson at 110; Deposition of R. Cagle at 16–17; Deposition of D. Heath at 23. On the other hand, the plaintiff asserts that no one had ever seen the palletizer malfunction in the manner in which it did at the time of James Beauchamp's accident or the steel plates close in the manner in which they did at that time. *See* Plaintiff's Brief, Affidavit of J. Cook at ¶ 3; Deposition of H. Patterson at 14; Deposition of W. Smith at 29. In view of this disputed evidence, the court concludes that

---

**8.** Mac Valves advances an additional argument in support of its position that it had no duty to warn. Quoting from *Orion Insurance Co. v. United States Technologies Corp.,* 502 F.Supp. 173, 178 (E.D.Pa.1980), Mac Valves asserts that "no public policy would be served by imposing a civil penalty on a manufacturer of specialized parts for a highly technical machine according to the specifications supplied by one who is an expert at assembling these technical machines ...." Defendant's Brief at 25.

Mac Valves' reliance on this case appears to be misplaced. The *Orion* court held that the manufacturer of a part made pursuant to a buyer's specifications is not liable under the *Restatement (Second)* § 402A for the defective design of the part and has no duty to warn the ultimate user of the risks caused by the design defect because the manufacturer's relative lack of expertise in the field meant that he was unable to foresee the risk. In *Orion,* the component parts at issue, the stationary star of a helicopter, were machined according to the specifications supplied by the manufacturer of the product, the helicopter. In the present case, Mac Valves has not adduced any evidence demonstrating that it produced the air valve at issue according to Russell Machine's specifications. Rather, the record substantiates that Russell Machine bought a standard valve through its purchasing agent from a distributor. *See* Deposition of R. Henke at 40.

summary judgment on this issue is inappropriate.

### B. Whether Mac Valves' Failure to Warn Proximately Caused James Beauchamp's Injuries

Mac Valves argues that even if it has breached its duty to warn, this breach was not the proximate cause of James Beauchamp's injuries. Rather, the defendant claims, the defective design of the palletizer and James Beauchamp's own actions proximately caused his injuries. First, regardless of whether the palletizer was defectively designed, Mac Valves may still be strictly liable for its failure to provide proper instructions or to warn the users of the air valve of its dangerous propensity to retain compressed air.

Second, plaintiff will be barred from recovery only if the user or consumer discovers the defect and is aware of the danger, but nevertheless proceeds unreasonably to make use of a product.[9] *Center Chemical Co. v. Parzini*, 234 Ga. at 870, 218 S.E.2d at 582. As discussed earlier, it is disputed whether James Beauchamp knew that the steel plates would close in the manner in which they did or that compressed air remained in the palletizer when it was de-energized. Furthermore, in light of the disputed evidence as to whether the palletizer had previously malfunctioned in the same manner in which it did on the date of James Beauchamp's injury, the court finds that the issue of the reasonableness of Beauchamp's actions is inappropriate for summary judgment.

### III. *Motion to Bifurcate*

Mac Valves moves to bifurcate the trial of the issues of liability and damages in the instant case on the ground that bifurcation would serve the interest of judicial economy and avoid prejudice. Mac Valves asserts that the jury's consideration of the damages sought by the plaintiff for James Beauchamp's injuries would subject it to prejudice. In opposing Mac Valves' motion, the plaintiff argues, first, that her proof of damages will involve only the testimony of two witnesses and, second, that the issue of liability and the issue of damages in this case are integrally related.

Rule 42(b), Fed.R.Civ.P., permits a court to order a separate trial of any claims or of any separate issue or issues.

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, ... or of any separate issue ..., always preserving the right of trial by jury ....

The decision to grant or deny a motion for separate trials on the issue of liability and damages is committed to the sound discretion of the court. *Warner v. Rossignol*, 513 F.2d 678 (1st Cir. 1975). In rendering this decision, the court must consider several factors: whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different.

Having carefully considered the contentions of the parties, the court is persuaded that separate trials heard by the same jury as to liability and damages should be held. Although the plaintiff's proof of damages will involve the testimony of only two witnesses, a paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants. *See Moss v. Associated Transport, Inc.*, 344 F.2d 23 (6th Cir. 1965). James Beauchamp was severely and permanently injured as a result of an industrial accident occurring at his place of employment. In order to avoid

---

**9.** Defendant suggests that it cannot be found to be the proximate cause of James Beauchamp's injuries because his actions constituted an intervening cause. The court observes that the principle of proximate cause and assumption of the risk are analytically distinct. Assumption of the risk generally is pleaded as an affirmative defense and bars compensation to a plaintiff who "voluntarily and unreasonably proceed[ed] to encounter a known danger." *Restatement (Second)* § 402A.

potential prejudice, it would be preferable to permit the jury to concentrate on the complicated issue of liability without considering evidence on the extent of James Beauchamp's injuries and the damages the plaintiff seeks for these injuries. *See Crummett v. Corbin,* 475 F.2d 816 (6th Cir. 1973); *Kushner v. Henden Construction, Inc.,* 81 F.R.D. 93 (M.D.Pa.), *aff'd without op.,* 609 F.2d 502 (3d Cir. 1979). Therefore, the court will grant Mac Valves' motion.

Accordingly, the motion of the defendant Mac Valves, Inc., for summary judgment is DENIED. The motion of the defendant Mac Valves, Inc., for bifurcation is GRANTED.

IT IS SO ORDERED.