Helen **LOWE**

v.

**PHILADELPHIA NEWSPAPERS, INC.**

Civ. A. No. 83–1771.

United States District Court,
E.D. Pennsylvania.

June 27, 1984.

**124**

Alice W. Ballard, Robert Hertzfeld, Philadelphia, Pa., for plaintiff.

Carl W. Hittenger, Richard S. Meyer, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court are: (1) defendant's motion to deny plaintiff's request for bifurcation of trial; (2) plaintiff's motion *in limine* to preclude defendant's proposed expert medical testimony on liability and certain other expert testimony; (3) defendant's motion to strike affidavits; and, (4) defendant's motion for summary judgment. These motions will be addressed *seriatim.*

### DEFENDANT'S MOTION TO DENY PLAINTIFF'S REQUEST FOR BIFURCATION OF TRIAL

Plaintiff Helen Lowe, a black female presently employed at Philadelphia Newspapers, Inc. ("PNI") in its Daily News Retail Advertising Department as an inside advertising sales person, brought this action against PNI under 42 U.S.C. § 1981 on April 14, 1983. Plaintiff's primary allegation in this litigation is that she was denied promotion to an outside advertising sales position because of her race and that she was retaliated against for bringing an earlier administrative complaint of race discrimination in 1980. She seeks injunctive relief and back pay for the failure to promote her to an outside sales position. Plaintiff also alleges that she suffered severe emotional and physical distress from alleged harassment on the job and seeks compensatory damages. A claim for punitive damages has also been alleged. Plaintiff has demanded a jury trial.

Discovery in this action was completed on November 30, 1983. See 101 F.R.D. 296. On December 14, 1983 the parties filed pretrial memoranda and on December 23, 1983 plaintiff filed an amended pretrial memorandum. In her pretrial memoranda, plaintiff has requested that this Court bifurcate the trial of this action and hold separate trials for liability and damages. Plaintiff has not filed a formal motion for bifurcation. Defendant PNI opposes plaintiff's request for bifurcation and filed the instant motion to properly bring the issue

of bifurcation before the Court for resolution. Defendant submits that bifurcation of the instant proceedings would be inappropriate because it would not serve the interests of judicial economy but would, on the contrary, cause numerous witnesses, including physicians, to be called twice, to testify in both the liability and damages stages of the case.

Plaintiff denies defendant's legal conclusions that bifurcation of the trial would not serve the interests of judicial economy and convenience and that bifurcation would not serve the interest of avoiding jury confusion or prejudice. Plaintiff also denies the allegation that bifurcation would result in substantial lengthening of the trial and the calling of physicians twice.

The Federal Rules of Civil Procedure, Rule 42(b) provides in pertinent part that:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, ... or of any separate issue...." F.R.C.P. 42(b).

In deciding whether bifurcation of a trial into separate liability and damages trials is appropriate, the Court must consider Rule 42(b) on a case-by-case basis in the exercise of informed discretion. *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). The procedure selected by the trial court should be "conducive to expedition and economy." *Kushner v. Hendon Construction, Inc.,* 81 F.R.D. 93, 98 (M.D.Pa.1979), *aff'd mem.,* 609 F.2d 502 (3d Cir.1979). Bifurcation should be granted only where the court concludes that separate liability and damage trials "further convenience or avoid prejudice." *Moss v. Associated Transport, Inc.,* 344 F.2d 23, 26 (6th Cir.1965); *See also, McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. 490, 492 (E.D.Pa.1983). The party seeking bifurcation has the burden of showing that bifurcation is proper in

light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties. *McCrae,* 97 F.R.D. at 492. The decision is within the discretion of the trial judge. *Id.*

Plaintiff has not demonstrated to the court "unfair prejudice." Plaintiff's argument for bifurcation is that defendant intends to call medical experts to testify that plaintiff is a "mental cripple" which she contends is irrelevant to the liability issue of the case. Defendant contends that the medical testimony proffered will prove plaintiff suffers from a personality disorder known as the "passive-aggressive personality" which tends to manifest itself in procrastination and intentional inefficiency making her procrastinate, dawdle and difficult to work with in that she is less likely to work at one hundred percent. Another expert will be presented by defendant to testify, *inter alia,* plaintiff's lack of qualifications due to her personality disorder.[1] Three other doctors may be called by the defense to testify on liability issues whether plaintiff's psychiatric problems predated her first attempt to obtain promotion in 1977; how the antidepressant and other medications, some of which have sporific side effects, effected plaintiff's dependability, quality of work, attitude in the work environment, and qualifications for promotion. Where damages evidence is involved in proof of the fact of damage, bifurcation into liability and damages trials is inappropriate. *Broadway Delivery Corp. v. United Parcel Service of America, Inc.,* 74 F.R.D. 438, 439 (S.D.N.Y.1977).

Finally, testimony by Drs. Speck and Kool is also relevant to the liability question of whether the alleged harassment claimed by plaintiff is racial and is harassment at all. Dr. Speck has testified in deposition that because of her personality disorder, plaintiff is overly sensitive and may have overreacted to events on the job. Dr. Kool will also be called to testify on

---

1. In *Hobson v. Western Airlines,* 25 F.E.P. cases 1509 (N.D.Cal.1980) discharge was held not racially discriminatory where defendant showed discharge was caused instead by plaintiff's mental health problems.

this subject. Testimony concerning a § 1981 plaintiff's mental disorder which causes him or her to perceive criticism as harassment, and to perceive racial slurs where no racial motivation is present, is highly relevant to the question whether plaintiff's perception of racial harassment is correct. *See Davis v. United States Steel Corp.*, 539 F.Supp. 839 (E.D.Pa.1982) (Newcomer, J.) (incidents alleged by plaintiff to be racial harassment held to be legitimate criticism and discipline inaccurately perceived by plaintiff because of emotional disorder).

For the foregoing reasons I am denying bifurcation of this trial.

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANT'S PROPOSED EXPERT TESTIMONY ON LIABILITY

The principal issue in this motion is whether the defendant will be permitted to present expert witnesses to testify as to plaintiff's personality characteristics. In her motion plaintiff presumed that bifurcation would be granted. Since bifurcation has been denied, the arguments proposed by plaintiff are moot. Plaintiff contended that if the trial were bifurcated into liability and damages issues, expert testimony would only be relevant on the damage issues and would be highly prejudicial and irrelevant to the liability issues.

■ The plaintiff couched her argument in the Federal Rules of Evidence, Rules 407 and 701. It is clear to me that defendants proposed expert testimony is relevant on the issues of plaintiff's mental state, alleged personality disorder and to corroborate the observations of defendants' managers who interviewed plaintiff for various promotions. Plaintiff can make her objections regarding relevancy of the expert testimony at trial.

## DEFENDANT'S MOTION TO STRIKE AFFIDAVITS

Defendant has moved to strike four affidavits submitted in support of plaintiff's opposition to defendant's motion for summary judgment.[2] Defendant contends the affidavits do not conform to the express requirements of Rule 56(e)[3] of the Federal Rules of Civil Procedure.

■ Rule 56(e) mandates that affidavits submitted in opposition to a motion for summary judgment must state that they are based upon "personal knowledge" of the affiant. Affidavits prefaced upon "belief" or "information and belief" must be striken. *Automatic Radio Mfg. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950) ("information and belief" not sufficient); *see also, Cermetek, Inc. v. Butler Aupak, Inc.*, 573 F.2d 1370, 1377 (9th Cir.1978) (affidavit statements such as "I believe", "belief", "understanding", and "information and belief" are insufficient under Rule 56(e)); *Gostin v. Nelson*, 363 F.2d 371 (3d Cir. 1966) ("information and belief" not enough).

Defendant contends the affidavit of Ross V. Speck, M.D. fails to aver that the statements contained therein are based upon his "personal knowledge" and therefore must be striken. *See Kern v. Tri-State Ins. Co.*,

---

**2.** Plaintiff has submitted the affidavits of Ross V. Speck, M.D., Alex Trombetta, Fred Bonaparte and Charles Marvin Porter.

**3.** Rule 56 provides:
(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

386 F.2d 754, 756 (8th Cir.1967) (physician's affidavit stricken because it did not state it was based on his personal knowledge, which is a mandatory requirement under Rule 56(e)).

Whereas, plaintiff has submitted an amended affidavit from Dr. Speck which specifically states, "the facts stated in this [a]ffidavit are based on my personal knowledge from observing and evaluating Mrs. Lowe in treatment."[4] Affidavit of Ross V. Speck, M.D. at 13 (April 16, 1984). The standard of review regarding affidavits of an expert witness devolved by the Third Circuit is very clear.

> The policy behind Rule 56(e) is 'to allow the affidavit to contain all evidentiary matters which, if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony.' ... [W]here, as here, the affidavits are submitted to oppose the grant of summary judgment, opinion evidence is appropriately considered to support the existence of a disputed issue of fact.

*Paton v. LaPrade,* 524 F.2d 862, 871 (3d Cir.1975).

Secondly, defendants contend that Rule 56(e) specifically provides that affidavits must be based upon "specific facts". Defendant contends that the affidavits of Alex Trombetta, Fred Bonaparte and Charles Marvin Porter must be stricken because said affidavits contain conclusory language, vague assertions, gross speculation and inferences. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982) (Rule 56(e) does not allow a party resisting [a motion for summary judgment] to rely merely upon bare assertions, conclusory allegations or suspicions"); *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 699–701 (9th Cir.1981) (affidavits stricken because they did not set forth specific supporting facts); *Over the Road Drivers, Inc. v.*

*Transport Ins. Co.,* 637 F.2d 816, 819 (1st Cir.1980) (affidavits which "do not go beyond the sort of unsupported assertions more appropriately confined to pleadings" do not defeat summary judgment); *Cermetek, Inc. v. Butler Avpak, Inc.,* 573 F.2d 1370, 1377 (9th Cir.1978) (bare unsupported assertions are insufficient); *Kung v. FOM Investment Corp.,* 563 F.2d 1316, 1318 (9th Cir.1977) ("conclusory allegations, unsupported by factual data, do not create a triable issue of fact."); *Carey v. Beans,* 500 F.Supp. 580, 583 (E.D.Pa.1980) (Troutman, J.), *aff'd mem.,* 659 F.2d 1065 (3d Cir.1981).

After a thorough review of the above cases and a comparison of the affidavits submitted by plaintiff's counsel, I am convinced that the affidavits substantially comply with the standard of Rule 56(e).[5]

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has filed a motion for summary judgment arguing that plaintiff's proof amounts to mere speculation, and that the plaintiff's personality disqualifies her not only from advancing in her employment but also from presenting her case to a jury for a determination of her claims.

The standard established by the Third Circuit which the defendant must meet for the District Court to grant summary judgment is clearly stated in *Knoll v. Springfield School District,* 30 F.E.P. Cases 1383 (3d Cir.1983) as follows:

> To affirm the District Court's summary judgment order we must determine whether there existed no dispute as to any material fact so that defendants were entitled to judgment as a matter of law ... neither the court on appeal nor the District Court at trial is authorized, in approving a summary judgment order, to decide disputed issues of facts' our sole task is to determine whether an un-

---

**4.** The timely amendment, supplementation and resubmission of affidavits is permitted by the Federal Rules of Civil Procedure, Rule 56(e) which states in relevant part: "The court may permit affidavits to be supplemented ..."

**5.** Plaintiff also amended the affidavits of Messrs. Trombetta, Bonaparte and Porter to comply with Rule 56(e).

resolved issue of material fact existed at the time the ruling was made.... accordingly we must view inference from the facts contained in the evidentiary material submitted to the District Court in the light most favorable to the party opposing the summary judgment motions.... that party's allegations must be taken as true and, when those assertions conflict with those of the moveant, the former must receive the benefit of the doubt. [citations omitted].

*Knoll,* 30 F.E.P. Cases at 1389.

▬ Where a question of discriminatory intent is at issue, summary judgment must be approached with caution. *Bronze Shields v. N.J. Dept. of Civil Service,* 667 F.2d 1074, 1087 (3d Cir.1981), (reversing a grant of summary judgment in favor of The City of Newark where plaintiffs were proceeding on an intent theory). Direct evidence of the employer's motivation is generally absent from the record, and must be inferred based on circumstantial evidence or witness credibility. For this reason, summary judgments are likely to be reversed in employment discrimination cases. *See Hicks v. Abt Associates, Inc.,* 572 F.2d 960 (3d Cir.1978). Summary judgment is "never warranted except on a clear showing that no genuine issue of any material fact remains for trial." *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19, 24 (3d Cir.1975), cited in *Wolk v. Saks Fifth Ave., Inc.,* 728 F.2d 221 at 224 (3d Cir.1984).

After careful review of the documents submitted by counsel for both parties I am convinced that there are genuine issues of material fact for the jury to consider on several issues raised by defendant.

### 1. *Plaintiff's Qualifications for Outside Sales*

Defendant argues that whatever the qualifications are for an outside salesperson, plaintiff lacks them because of a diagnostic des personality type (which defendant claims is a total determinant of her behavior on the job), and because of her absences from working during years when she underwent surgery. However, as plaintiff has demonstrated defendant's arguments can be fully met with facts from which just the opposite inferences emerge. This is a case to be decided by jury verdict, not by an Order under Rule 56 of the Federal Rules of Civil Procedure.

The qualifications for an outside salesperson are evaluated by defendant's managers on a subjective basis, without reference to any generally stated criteria or guidelines. Many candidates have been found unqualified to do outside work by one manager, only to be promoted into another outside sales job by another manager. As Joseph Smith explained when testifying about why he rejected Charles Adams' application for the job Pat Odoms was awarded: "You like vanilla and I like chocolate. So Mr. Hayden has him and I don't have him". Smith Tr. at 60. Charles Adams was subsequently selected by Jim Hayden for another outside sales vacancy for which plaintiff applied. Thus, defendant is in no position to argue that the qualifications of plaintiff and her competitors can be compared in any objective way which will settle without reference to witness demeanor the questions of relative fitness to do the job. Affidavits submitted by plaintiff's counsel in support of their arguments in opposition to defendant's motion clearly demonstrate that plaintiff's sales capacity is a disputed factual issue for the jury.

### 2. *Plaintiff's Claim of Retaliation*

The evidence before the Court demonstrates that there are material facts in dispute which suggest a *prima facie* case of retaliation against plaintiff for complaining of racial discrimination. Subsequent to the filing of her EEOC complaint in June of 1980, in 1981, three years after she had been in her present inside sales position, she was required for the first time to keep call cards for each and every telephone call.

▬ When plaintiff complained in 1982 to PNI's president Sam McKeel about the lack of blacks in outside sales positions, he specifically asked about the status of her EEOC litigation. Subsequently, she was

requested to a meeting wherein she requested a witness, which request was denied, and her work performance was destructively criticized. In the context of PNI's explicit knowledge of plaintiff's EEOC litigation, a jury could infer that defendant took these actions as retaliation. In addition, she did not receive a promotion after her EEOC complaint though she applied for 15 new jobs. In determining whether this was retaliation, the jury may focus on the motivation not only the nature of the adverse action. *Sogluizzo v. Local 817 Teamsters*, 514 F.Supp. 277 (S.D.N.Y. 1981), relied on by defendant, is not to the contrary.

### 3. *Plaintiff's Claim for Compensatory and Punitive Damages*

Plaintiff claims compensatory and punitive damages for defendant's refusal to promote her and for the racial harassment she has suffered in the office. She claims that PNI's treatment of her, both its refusal to promote her and the office atmosphere defendant's managers permitted, resulted in emotional distress requiring psychiatric treatment to alleviate *inter alia* stress and tension. Plaintiff has detailed material facts in dispute which, if credited by the jury, would establish a case of intentional racial discrimination for failing to promote her when she was otherwise qualified.

Plaintiff has alleged actions by the defendant from which a jury could infer intentional discrimination although the events could also be explained in a non-discriminatory way. As in the recent case of *Powell v. Pennsylvania Housing Cement Agency*, 563 F.Supp. 419, 33 EPD para. 34,027 (M.D.Pa., 1983), "it would be inappropriate for this Court to deprive the plaintiff of [her] seventh amendment right to a jury trial when [she] has a colorable claim for punitive damages." Plaintiff's deposition testimony suggests many of the same activities by defendant which resulted in the award of compensatory and punitive damages to plaintiff Mamie Croker in *Croker v. Boeing Co.*, 23 F.E.P. Cases

1783, 1789–90, (E.D.Pa.1979). *See also, Foster v. MCI*, 30 F.E.P. Cases 1493 (D.Colo.1983) (absence of meaningful standards and general attitude in race relations justifies inference of racial discrimination; compensatory damages for emotional suffering awarded; punitive damages denied on close question). Plaintiff's psychiatrist has testified at deposition to his opinion that her condition was amplified by the stresses she suffered at her place of employment. Plaintiff has raised sufficient disputed material facts to justify a jury's considering whether she is entitled not only to compensatory but also to punitive damages to deter PNI from continuing in its course of activity. Accordingly, because there are material facts in dispute, summary judgment must be denied.