**Bruce MILLER, Plaintiff,**

v.

**NEW JERSEY TRANSIT AUTHORITY RAIL OPERATIONS, et al., Defendants.**

Civ. A. No. 92–1396 (MLP).

United States District Court, D. New Jersey.

March 3, 1995.

**38**

C. Barry Montgomery, Hall Adams, Williams & Montgomery, Chicago, IL.

Robert Strong, Robert Marano, John C. Grady, New Jersey Atty. General's Office, Trenton, NJ.

Peter N. Perretti, Jr., Anne M. Patterson, Frank C. Welzer, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ.

David A. Parker, Parker, McCay & Criscuolo, Marlton, NJ.

Frank Basile, Diane Vari, Basile, Testa & Testa, Vineland, NJ.

Edward G. D'Alessandro, Jr., D'Alessandro & Jacovino, Florham Park, NJ.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

These matters come before the Court upon *in limine* motions raised at the Final Pretrial Conference on December 13, 1994. First, Defendants, New Jersey Transit and the individual Princeton employees, seek an order from this Court that the trial be trifurcated into liability, damages, and indemnification phases. Plaintiff opposes·this motion on the grounds that such trifurcation would be inefficient and would not be "conducive to expedition and economy." Second, Third–Party Defendant Cottage Club seeks an order from this Court that the claim filed by Third–Party Plaintiffs, the individual Princeton employees, and the cross-claim filed by New Jersey Transit for contribution be severed from the main trial. New Jersey Transit and the individual Princeton employees oppose this motion, asserting that Cottage Club is a joint tortfeasor, and thus, its percentage of fault, in relation to the other parties, must be determined during the main trial.

The Court has reviewed the written submissions of the parties and has heard oral argument on these issues at the Final Pretrial Conference held on December 13, 1994. For the reasons stated herein, the *in limine* motion of Defendants, New Jersey Transit and the individual Princeton employees, for a trifurcated trial is granted and Third–Party Defendant Cottage Club's motion is dismissed as moot.

## I. *JURISDICTION*

■ At the Final Pretrial Conference held on December 13, 1994, the Court indicated to the parties that it would consider the *in limine* motions presently before the Court and would make a recommendation to the trial judge regarding disposition. Upon further review of these *in limine* motions, the Court has determined that, pursuant to *Fed. R.Civ.P.* 16(c)(13) and *D.N.J.Gen.R.* 40(A), it is within this Court's jurisdiction to order separate trials with regard to any claim, pursuant to *Fed.R.Civ.P.* 42(b). The District Court for the District of New Jersey, through Local Rule 40(A), has granted significant case management duties to magistrate judges. The Federal Rules, through Rule 16(c)(13), permit courts, as a matter of efficient case management, to issue orders for separate trials or separate presentation of evidence at trial on different issues. Moreover, the Court has concluded that because of the amount of work that each party must do in preparation for trial it would be beneficial for both the Court and the parties to know, at this stage, precisely how the issues will be tried. Finally, the Court notes that treatment of the motions by issuing an order rather than a recommendation would not prejudice any party as the different review

procedures by the district judge are comparable.

## II. BACKGROUND

This action arises from very substantial personal injuries suffered by Plaintiff, Bruce L. Miller, on November 27, 1992, while a student at Princeton University. Plaintiff suffered these injuries after climbing onto an actively electrified train parked at a railroad station in Princeton, New Jersey. Prior to the accident, Plaintiff and several friends went to various "eating clubs" situated in Princeton, New Jersey. Plaintiff apparently consumed a significant amount of alcohol at these establishments prior to climbing onto the train. As a result of his contact with the electrified train, Plaintiff suffered excruciating pain culminating in the loss of three limbs.

Defendants, New Jersey Transit and the individual Princeton employees, have filed an *in limine* motion seeking an order from this Court that the trial in this matter be trifurcated. Defendants maintain that trifurcation is appropriate to prevent undue prejudice and to foster judicial economy. Plaintiff has opposed the motions, claiming that the evidence that will be presented during the liability and damages phases overlap, and thus, because certain witnesses will have to be called twice, trifurcation would be inefficient. Additionally, Plaintiff opposes the motion because he asserts that he will suffer undue prejudice as a result of trifurcating the trial.

Third–Party Defendant, Cottage Club, has filed a separate *in limine* motion seeking an order that severance of the claims against Cottage Club is appropriate. New Jersey Transit and the individual Princeton employees originally opposed this motion, claiming that because Cottage Club is a joint tortfeasor its percentage of liability in relation to the other parties must be determined so that the total of all parties' fault is 100%. *See* N.J.S.A. 2A:53A–1, *et seq.; see also* N.J.S.A. 2A:15–5.1, *et seq.* However, subsequent to the motion for severance, Cottage Club settled directly with Plaintiff, thereby extinguishing any claims for contribution or indemnification. Defendants, New Jersey Transit, the individual Princeton employees,

and SAE, have submitted letter memoranda asserting that, while they do not oppose Cottage Club's dismissal from the case, they request that Cottage Club's percentage of fault, nevertheless, be determined by the jury at trial.

## III. PROCEDURAL HISTORY

On April 3, 1992, Plaintiff filed a complaint against New Jersey Transit, the Trustees of Princeton, Eugene McPartland, Jon Hlafter, and Jerrold Witsil. On June 6, 1992, the Trustees of Princeton, Eugene McPartland, Jon Hlafter, and Jerrold Witsil filed their answer to the complaint and filed a cross-claim against New Jersey Transit. On November 11, 1992, New Jersey Transit filed a Third–Party complaint against Campus Club and Sigma Alpha Epsilon. Plaintiff filed an amended complaint on November 25, 1992 against Jack Faust, Thomas Greico, and Joseph Gawarkiewicz. On January 21, 1993, Plaintiff filed a second amended complaint naming Campus Club and Sigma Alpha Epsilon as Defendants. Defendants, Jerrold Witsil, Jon Hlafter, Eugene McPartland, the Trustees of Princeton, Jack Faust, Thomas Greico, and Joseph Gawarkiewicz, filed a Third–Party complaint against Cottage Club on October 5, 1993. The motions of Plaintiff, New Jersey Transit, and the individual Princeton employees for summary judgment were all denied on October 4, 1994. On January 4, 1995, summary judgment for Third–Party Defendant, Cottage Club was denied. Summary judgment was granted as to Princeton University, dismissing the complaint against the institution but not against the individual Princeton Defendants, on October 4, 1994.

## IV. DISCUSSION

### A. Trifurcation of Liability, Damage, and Indemnification Issues

█ Bifurcation of issues at trial is governed by Federal Rule of Civil Procedure 42(b) and states, in pertinent part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any

claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution, or as given by a statute of the United States.

*Fed.R.Civ.P.* 42(b). "[T]he decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978) (citation omitted). Generally, bifurcation is only granted where the trial court ascertains that separate trials would "further convenience or avoid prejudice." *See McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. 490, 492 (E.D.Pa.1983). Bifurcation may prove to be advantageous "by enhancing juror comprehension of the complex issues presented." *See Barr Laboratories, Inc. v. Abbott Laboratories,* 978 F.2d 98, 115 (3d Cir.1992). In determining whether or not to bifurcate, the court must select the procedure "conducive to expedition and economy." *Kushner v. Hendon Construction, Inc.,* 81 F.R.D. 93, 98 (M.D.Pa.1979), *aff'd mem.,* 609 F.2d 502 (3d Cir.1979).

 "The party seeking bifurcation has the burden of showing that bifurcation is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." *Lowe v. Philadelphia Newspapers, Inc.,* 594 F.Supp. 123, 125 (E.D.Pa.1984) (citations omitted). The party seeking bifurcation must demonstrate that he will suffer prejudice if separate trials are not granted. *Marshall v. Overhead Door Corp.,* 131 F.R.D. 94, 97 (E.D.Pa. 1990). The decision to bifurcate is completely within the discretion of the trial court. *See Lowe v. Philadelphia Newspapers,* 594 F.Supp. at 125.

██ Defendants, New Jersey Transit and the individual Princeton employees, have requested that the Court try this action in three stages, with the first stage limited to the issue of liability; the second stage limited to the issue of damages; and the third stage limited to indemnification. In support of that request, Defendants claim that separate trials on these issues would be appropriate in furtherance of judicial economy and to avoid undue prejudice. Defendants state that separate trials are necessary to avoid undue prejudice because of the severity of Plaintiff's injuries. Defendants maintain that undue prejudice would result from a single trial because sympathetic jurors may be more concerned with awarding Plaintiff some money simply to compensate him for his severe injuries, without first determining fault. Additionally, Defendants assert that the instant trial could easily be tried in separate phases, and would, thus, be conducive to judicial economy. In support of their position, Defendants state that the evidence on liability and damages is almost completely unrelated and that, depending upon the determination of Plaintiff's percentage of comparative negligence, the damage phase either may not be necessary, if no liability is found, or may not be reached, if liability is found, because of the increased likelihood of settlement.

Plaintiff opposes trifurcation for several reasons. He notes that as the parties seeking trifurcation, the Defendants have the burden of showing that, in light of the fact that a single trial is usually more expedient, trifurcation is proper in this instance. *See McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. 490 (E.D.Pa.1983). Plaintiff contends that Defendants have failed to meet their burden and points to the following factors which, he contends, make trifurcation inappropriate: (1) the evidence which will be presented on liability and damages is too overlapping to make severance manageable; (2) trying issues separately will result in certain expert and lay witnesses testifying twice on both issues of liability and damages; (3) Plaintiff's damages' case will take no longer than three days; (4) prejudice will result to Plaintiff because a jury must know about the severity of the hazard which Defendants ignored and such evidence can only be presented through a combination of liability and damages evidence; (5) Plaintiff will not have a fair opportunity to present its "cost to victims" evidence as a part of the cost/benefit

analysis which Plaintiff believes will likely be a part of this case.

After considering the arguments raised by all parties, this Court is convinced that trifurcation is appropriate. The Court finds that concerns of judicial economy and clarification of crucial issues for the jury vastly outweigh any concern of prejudice to the Plaintiff. Although presented in different segments, the issues, and related evidence, will be heard by the same jury. This jury will hear the liability case first, then, if necessary, hear the damage phase which will be followed by any indemnification proceeding. However, the damage phase will be divided into two separate hearings; the first on compensatory damages, and, if necessary, the second on punitive damages.

The Court finds, contrary to Plaintiff's assertion, that Defendants have, indeed, met their burden of demonstrating that trifurcation of this trial is proper. In this case, the damage and indemnification testimony is, in large measure, unrelated to the liability testimony. Trifurcation may actually shorten the trial. Additionally, it would be preferable to have the jury concentrate on the issue of liability without being aware of the damage figures involved so that prejudice would not result to the Defendants from the jury's consideration of the nature and severity of Mr. Miller's injuries when determining whether or not Defendants were actually responsible for the accident. Finally, it is inconceivable to this Court that any jury would be unaware of the severity of the injuries. The proofs at the liability phase, even though somewhat limited, will amply demonstrate that Plaintiff lost three limbs and suffered excruciating pain. Thus, any claim of prejudice by Plaintiff that the jury will not be presented with the total picture is illusory. Furthermore, any claim of prejudice for additional costs associated with recall of certain witnesses is minimal when compared to Plaintiff's demand (and likely recovery if liability is found) for millions of dollars.

█ While Plaintiff claims that several witnesses will have to testify during both the liability and damage phase, "a paramount consideration in ruling on a motion to bifurcate is a fair and impartial trial to all litigants." *Beauchamp v. Russell,* 547 F.Supp. 1191, 1199 (N.D.Georgia 1982) (citing *Moss v. Associated Transport, Inc.,* 344 F.2d 23 (6th Cir.1965)). Defendants have demonstrated to the Court that unfair prejudice will necessarily result if the trial is not trifurcated. The Court finds that Defendants would suffer actual prejudice if the damage stage were tried with the complicated liability stage because while the jury will be aware during the liability stage of the severity of Plaintiff's injuries, they will not be diverted by the actual figures involved in past and future medical costs and the graphic descriptions of the injuries themselves. The amount of damages in question is significant because, as Defendants correctly point out, sympathetic jurors might be inclined to award Plaintiff some money, no matter how small, regardless of fault, if they were aware of the magnitude of the injuries incurred and the damages sought. Trifurcating the trial will allow the jurors to concentrate more closely on liability without knowing precisely how extensively Mr. Miller was injured, whereas a single trial would present the very real potential of clouding even a conscientious juror's judgment.

The Court relies on several cases in reaching its determination that allowing this case to be tried together, in one stage, would potentially cause prejudice to the Defendant. In *Crummett v. Corbin,* 475 F.2d 816 (6th Cir.1973), the United States Court of Appeals for the Sixth Circuit concluded that the District Court did not err in bifurcating the trial. *Id.* at 817. In *Crummett,* the plaintiff suffered personal injuries as a result of an auto accident. *Id.* After her bifurcated trial where the jury returned a verdict for defendants on liability, plaintiff appealed, claiming that she had been prejudiced because the jury was unable to consider evidence regarding her injuries. *Id.* The Appellate Court, in holding that the District Court had not abused its discretion in bifurcating the trial, found "such consideration of [injuries] evidence not related to the question of liability appears to be a type of prejudice which is to be avoided by separating the issues of liability and damages under Rule 42(b)." *Id.*

Additionally, in *Kushner v. Hendon Construction Inc.*, 81 F.R.D. 93 (M.D.Pa.1979), the District Court, on a motion for a new trial, determined that the Court had not committed error in bifurcating the case between liability and damages. *Id.* at 99. In *Kushner*, plaintiff filed suit against Hendon Construction seeking damages for extensive personal injuries incurred by plaintiff as a result of falling from the first floor of his vacation home into the basement after the basement stairs had been removed. *Id.* at 95. The Court held that the decision to bifurcate was correct because the liability testimony and damages testimony were unrelated, bifurcation had resulted in shortening the trial, and the jury was able to consider liability without being aware of how seriously plaintiff was injured. *Id.* at 99. Similarly, in *Beauchamp v. Russell*, 547 F.Supp. 1191 (1982), the Court determined that the issues of liability and damages should be bifurcated to avoid the potential prejudice to defendant that might result if the jury were to consider during the liability phase the degree of plaintiff's injuries and the damages sought. *Id.* at 1199–1200. In *Beauchamp*, plaintiff had been "severely and permanently injured" in an industrial accident in which his head was caught between two steel plates on a stacking device. *Id.*

Initially, in this case, the liability stage alone will be significantly complicated simply because of all of the different entities involved. If the case were tried in one trial, the jurors would certainly be confused by the facts and the numerous issues involved. The Court finds little prejudice to Plaintiff in the fact that a few of the witnesses may be called twice in comparison to the prejudice that Defendants will suffer if the entire case is tried together. The complexity of the case and the severity of Plaintiff's injuries would prejudice the Defendants so severely if issues of liability and damages were not bifurcated that the Defendants would not receive a fair trial.

Additionally, the damage phase will be separated into two separate stages; one for compensatory, and one for punitive damages, if necessary. In a diversity case in which punitive damages are sought, the trial must be bifurcated so that the trier of fact first determines whether compensatory damages will be awarded and then in a subsequent hearing determines whether punitive damages will also be awarded. *See Herman v. Sunshine Chemical Specialties, Inc.*, 133 N.J. 329, 342–43, 627 A.2d 1081 (1993).

The indemnification portion of the trial will also be tried separately from the liability and damage phases. The indemnification claim revolves around a contract for indemnity which was entered into on October 30, 1984 between Princeton University (and realistically, the individual Princeton employees) and New Jersey Transit. If it were tried with the issue of liability, the issue of indemnification would certainly serve to confuse the jury because not only would the jury have to determine which, if any of the Defendants, are at fault, but also would have to determine whether, and exactly how, the contract for indemnity is applicable. Additionally, as a practical matter and depending upon the special interrogatories to be presented to the jury at the liability phase, the Court may, eventually, be in a position to determine the indemnification issue alone, as no factual issue may be left to determine.

■ Further, the Court was advised by letter dated February 21, 1995, that New Jersey Transit and the individual Princeton employees (the only parties involved in the indemnification issue) have agreed to sever the indemnification portion of the trial from the main case. However, New Jersey Transit objects to the same jury hearing the liability and damage issues also hearing the indemnification issues and suggests that the trial judge conduct a separate evidentiary hearing on the indemnification issue after resolution of liability and damages. The Court finds that the trial judge, without a jury, should decide the indemnification issue. *See* N.J.S.A. 59:13–4 (requiring that contract claims against the State be heard by a judge sitting without a jury). The question of whether the Court need conduct a separate evidentiary hearing on indemnification is best determined after the liability phase has been concluded.

Accordingly, Defendants' *in limine* motion for an Order that the trial be trifurcated is

granted. The liability issues shall first be determined by the same jury which will subsequently consider the damage issues, if necessary, with separate compensatory and punitive damage phases and, then, again if necessary, consideration of any indemnification issues.

*B. Severance of the Third–Party Complaint*

█ In early January, 1995, Third–Party Defendant Cottage Club settled directly with Plaintiff. All parties agree that the claims against Cottage Club for contribution have been extinguished and any claims for contribution and indemnification must be dismissed. Defendants, New Jersey Transit, SAE, and the individual Princeton employees, although not opposing Cottage Club's dismissal of such claims, assert that Cottage Club's percentage of liability should be determined by the jury so that they may receive credits for Cottage Club's percentage of liability, if any.

The Court finds that, notwithstanding Cottage Club's settlement with Plaintiff, evidence relating to the fault of Cottage Club may be presented to the jury for a determination of a percentage of liability so that the other Defendants receive any credit that they are entitled to based upon Cottage Club's percentage of fault. *See Young v. Latta,* 123 N.J. 584, 589 A.2d 1020 (1991). Special interrogatories to the jury should be crafted for trial so that liability, if shown, can be apportioned among all Defendants.

Accordingly, any claim against it having been extinguished by settlement with Plaintiff, Cottage Club's *in limine* motion for severance is dismissed as moot.

## V. *CONCLUSION*

Based on the foregoing reasons, the Court finds that the trial should be trifurcated. The Court will order that the case be tried in three separate stages; liability, damages, and indemnification. Additionally, the Court will order that the damages stage be heard in two separate phases; compensatory and punitive. Each phase will be heard and decided by the same jury or, if appropriate, the Court alone. Finally, Third–Party Defendant Cottage Club's *in limine* motion to have the claims against it severed from the main trial is dismissed as moot in view of that part's settlement directly with Plaintiff.

## ORDER

These matters having come before the Court upon the *in limine* motion of Defendants, New Jersey Transit and the individual Princeton employees, seeking an Order trifurcating this case at trial, and upon the *in limine* motion of Third–Party Defendant Cottage Club for an Order severing the claim against it for contribution from the remainder of the trial; and Plaintiff having opposed the *in limine* motion for trifurcation; and New Jersey Transit and the individual Princeton employees originally having opposed Cottage Club's *in limine* motion; and the Court having subsequently received submissions from Plaintiff, and Defendants, individual Princeton employees, New Jersey Transit, and SAE, stating that none of these parties oppose the dismissal of Cottage Club from the case; and the Court noting that the subsequent submissions from Defendants assert that the jury at trial should make a determination as to Cottage Club's percentage of liability; and the Court having reviewed the written submissions of the parties; and the Court having heard oral argument on the motions at the Final Pretrial Conference conducted on December 13, 1994; and for the reasons stated in the accompanying Memorandum Opinion; and good cause having been shown;

IT IS on this 3rd day of March, 1995,

ORDERED that the *in limine* motion of Defendants, New Jersey Transit and the individual Princeton employees, for an Order from this Court trifurcating the trial is granted; and it is

FURTHER ORDERED that the liability issues shall be determined by the same jury which will subsequently consider the damage issues, if necessary, with separate compensatory and punitive damage phases and, then, again if necessary, consideration of any indemnification issues; and it is

FURTHER ORDERED that Third–Party Defendant Cottage Club's *in limine* motion

for severance of the claims against it from the remainder of the trial is dismissed as moot.