64584. WILLIAMS PLAZA, INC. v. SEDGEFIELD SPORTSWEAR DIVISION OF BLUE BELL, INC.

SHULMAN, Presiding Judge.

This case presents a question dealing with the ability of an unsecured creditor of a wholly-owned subsidiary corporation to reach the assets of the parent corporation to satisfy the subsidiary's debt on its account with the creditor. After trial, the court submitted the case to a jury, which returned a verdict in favor of the creditor/appellee in the amount of $5,348.69 against the parent corporation/appellant. Appellant challenges on appeal the trial court's denial of its motions for directed verdict, new trial, and judgment notwithstanding the verdict, as well as portions of the court's charge.

" '(U)pon equitable principles the legal entity of a corporation may be disregarded when it is the mere alter ego or business conduit of an individual, or when the motion of its legal entity is used to defeat public conveniences, justify wrong, protect fraud, or defend crime' . . . 'By whatever means the conclusion to disregard corporate entity is arrived at, when it is reached it merely means that under the facts of the case the person or corporation in control of the subservient corporation is held liable for the acts or omissions of the subservient corporation.' " *Jones v. Cranman's Sporting Goods,* 142 Ga. App. 838, 841 (237 SE2d 402). " 'To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made

it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owner no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' [Cits.] Great caution should be exercised by the court in disregarding the corporate entity . . ." *Farmers Warehouse v. Collins,* 220 Ga. 141, 150 (137 SE2d 619).

Although "[w]hen litigated, the issue of 'piercing the corporate veil' is a jury question" (*Fla. &c. Tobacco Growers v. Duncan,* 150 Ga. App. 34, 35 (256 SE2d 644)), it is clear that the issue should not be submitted to a jury where "[t]here is no evidence that [the parent corporation] 'was a sham, or that it was used to defeat a public convenience to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of . . . [its] . . . separate entity.' [Cit.]" *Id.*, p. 35. Consequently, the threshold question in the present case can only be resolved by reviewing the evidence to determine whether there has been any showing by appellee that appellant's subsidiary was the mere instrumentality of appellant in such a manner that recognition of the separate entity "would promote injustice or protect fraud." *Farmers Warehouse,* supra. Appellant's fourth enumeration of error challenges the trial court's denial of its motion for directed verdict, which was based on the doctrine of corporate entity.

The facts surrounding the relationship of appellant and its subsidiary are basically undisputed. Appellant, Williams Plaza, Inc. (hereinafter "Williams"), purchased the subsidiary, Gentlemen's Corner, Inc., on December 29, 1978. Gentlemen's Corner had been incorporated in 1977 and was a retail men's clothing store located in a shopping center owned and operated by Williams. The initial investors became discontented with the performance of Gentlemen's Corner and sold the entire interest in the corporation to Williams for $6 and Williams' agreement to assume certain liabilities, the most significant of which was a $100,000 bank note. At the time of the acquisition and continuing through the liquidation of Gentlemen's Corner, Sam Smith was the president of both Williams and Gentlemen's Corner and served as director of both corporations. Gene Smith, Mr. Smith's wife, was the only other director and officer of Williams, and Richard Garrison was the only other director and an officer of Gentlemen's Corner. Mr. Garrison's involvement ended with the liquidation of Gentlemen's Corner.

Mr. Smith testified that Williams purchased Gentlemen's Corner "to keep the tenant in the center" and "to make it [Gentlemen's Corner] into a profitable business." The $100,000 note was refinanced with a $125,000 loan in Williams' name. The bank

officer making the loan testified that he was approached by Mr. Smith about a $125,000 loan to Gentlemen's Corner, which was refused. The bank agreed, however, to issue the loan to Williams with Gentlemen's Corner as guarantor, along with a security agreement listing Gentlemen's Corner as debtor and securing as collateral for the note its existing and after-acquired inventory. The $25,000 in excess of the existing loan was used as working capital for Gentlemen's Corner.

The evidence showed that the daily management of Gentlemen's Corner was the responsibility of Mr. Garrison, with no involvement from Mr. Smith. The two corporations maintained separate books and records and had different individuals handling their respective books and records. There was no commingling of funds or accounts, although Williams did advance over $63,000 in loans to Gentlemen's Corner, only $5,000 of which was repaid. There is no evidence that the separate corporate entities were maintained in an effort to defraud creditors or that Williams "milked" the assets of its subsidiary. It is undisputed that appellee sold its merchandise to Gentlemen's Corner and that Williams was not an obligor under that account.

Gentlemen's Corner was voluntarily liquidated in early 1980. The liquidation was conducted under the auspices and approval of the bank that had issued the $125,000 note. All proceeds from the liquidation were paid to the bank to reduce the debt on the note. Approximately $48,000 remained on the note after the liquidation and remained the obligation of Williams. Appellee, along with the remaining unsecured creditors, including Williams, received nothing from the liquidation.

We do not believe, under the facts of this case, that appellee has produced evidence sufficient to allow a jury to "pierce the corporate veil" and hold appellant liable on the account of Gentlemen's Corner. While it is true that both corporations have common ownership, and that one is a wholly-owned subsidiary of the other, these facts alone are not sufficient to overcome the fact that the two are separate and distinct entities in the eyes of the law. *Waycross &c. R. Co. v. Offerman &c. R. Co.,* 109 Ga. 827, 828 (35 SE 275); *Collins v. Booker,* 129 Ga. App. 824, 825 (201 SE2d 676). The fact that the acquisition of Gentlemen's Corner may have been in the interest of appellant certainly cannot warrant the disregard of corporate entity: it can safely be presumed that one corporation does not acquire the stock of another unless the acquisition is perceived by the former to be in its interest. *Molly Pitcher &c. Co. v. Central of Ga. R. Co.,* 149 Ga. App. 5, 14 (253 SE2d 392). Likewise, the independent structure of the two corporations is not impaired by the joint obligation on the $125,000

note. There is no evidence that those funds, or any other funds of Gentlemen's Corner, were in any way misappropriated or misused by appellant.

We draw no inference of fraud, artifice, or trickery from the liquidation of Gentlemen's Corner. Appellee has produced no evidence that any of the proceeds from the liquidation were improperly applied or that the liquidation was improperly conducted. All of the evidence adduced at trial demonstrates the contrary. The present case differs from *Carver v. Battey Machinery Co.,* 161 Ga. App. 315 (291 SE2d 63), wherein evidence was produced demonstrating that the sole shareholder was using his corporation as a subterfuge to keep the assets of the corporation from its creditors. There is no indication that appellant used the liquidation sale or any other means to divert the assets of Gentlemen's Corner away from creditors who would otherwise be able to reach the assets or their proceeds, or that appellant was draining the assets of Gentlemen's Corner for the benefit of appellant or its officers, directors, or shareholders. See *Trans-Am. Communications v. Nolle,* 134 Ga. App. 457 (214 SE2d 717).

Nor do all of the facts of this case combine to show that the "corporate veil" of the subsidiary should be pierced. The record is devoid of evidence showing that the subsidiary "was a sham, or that it was used to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of its separate entity." *Fla. &c. Tobacco Growers,* supra, p. 35. In *Jones v. Adamson's, Inc.,* 147 Ga. App. 282 (4) (248 SE2d 514), the showing that a corporate defendant was owned by a single individual, who also served as its president, employed members of the shareholder's family, had one telephone listed in the name of the shareholder, and rented property from the shareholder was insufficient to raise a jury question as to whether the shareholder could be held liable for the corporation's torts. "The facts argued by appellants do not show that Adamson disregarded the corporate entity or that the corporate entity was used 'to defeat justice, to perpetrate fraud, or to evade contractual or tort responsibility'. . ." Id., p. 284.

Having failed to show that the corporate entity of Gentlemen's Corner was improperly used to promote fraud or other injustice, appellee cannot claim that equity demands disregard of the corporate fiction merely because the subsidiary is now unable to satisfy its debt. "[O]ne who deals with a corporation as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence for the purpose of holding the owner liable." *Lamas v. Baldwin,* 140 Ga. App. 37, 40 (230 SE2d 13).

In deciding this case we are faced with two, sometimes conflicting, maxims: on the one hand, great caution should be exercised when disregarding the corporate entity; on the other hand, when litigated, the issue of "piercing the corporate veil" is for the jury. However, it is clear that the issue should not be submitted to the jury where there is no evidence that rises to the level sufficient to allow the corporate entity to be disregarded. *Cornwell v. Williams Bros. Lumber Co.,* 139 Ga. App. 773 (1) (229 SE2d 551). We find no such evidence in this case, and the trial court erred in failing to direct a verdict in appellant's favor.

*Judgment reversed. Quillian, C. J., and Carley, J., concur.*

DECIDED NOVEMBER 17, 1982 —
REHEARING DENIED DECEMBER 8, 1982 —

*William Boyd Lyons,* for appellant.
*George L. Williams, Jr.,* for appellee.