## 66802. BASS et al. v. CITIZENS & SOUTHERN NATIONAL BANK et al.

BANKE, Judge.

During the early 1970's, appellant Bass and the other appellants, which are corporations and limited partnerships in which Bass was a principal officer or general partner, were involved in a series of shopping center developments. (These various corporations and partnerships will be referred to herein, as they have been by the parties in their briefs, as the "Naredel entities.") Bass and the Naredel entities financed their operations, at least in part, through loans from the appellees in this case, C&S Bank and Southmark Corporation (formerly known as Citizens and Southern Realty Investors.) A number of other parties were also named as defendants originally but have either been voluntarily dismissed by the appellants or dismissed by the trial court on motion.

By 1974, Bass and the Naredel entities were in default on loans from the appellees amounting to millions of dollars. The parties attempted over the next several years to work out their difficulties, but these efforts proved to be unsuccessful, due in part, apparently, to a rise in interest rates and a decline in real estate values which occurred during that period of time. On January 7, 1977, Bass and his companies entered into a final settlement with Citizens and Southern Realty Investors (CSRI) (now appellee Southmark Corporation). Included in this settlement agreement were a general release as well as covenants not to sue in favor of both appellees. Thereafter, the appellants brought this action to recover damages from the appellees for conspiracy and tortious interference with contractual relations. The complaint was subsequently amended to allege that the settlement documents were fraudulently procured. During the

course of the trial, the court severed the issue of whether the settlement documents were binding upon the appellants (see generally OCGA § 9-11-42 (Code Ann. § 81A-142)), and, after conducting a hearing on this issue, determined that the documents were binding and that they constituted a bar to the appellants' action. The court accordingly directed a verdict in favor of the appellees as to all the issues raised in the complaint.

In this appeal, the appellants contend that the settlement agreement, covenants not to sue, and the general release are not binding, both because of the non-occurrence of a condition precedent and because they were obtained by fraud. The appellants also contend that the trial court erred in allowing C&S Bank to amend its counterclaim, which remains pending in the court below. *Held:*

1. Appellants' initial enumeration of error is based on Bass' testimony that the settlement documents, including the general release and covenants, were to be held in "escrow" until he was able to complete further negotiations and settlements. The trial court found, and we agree, that Bass' testimony in this regard amounts to an impermissible attempt to vary the terms of the written agreement in violation of the parol evidence rule. Such a ruling is squarely mandated by the Supreme Court's decision in *Smith v. Standard Oil Co.,* 227 Ga. 268 (1) (180 SE2d 691) (1971). See *Lyon v. Patterson,* 138 Ga. App. 816 (227 SE2d 423) (1976). The documents in question recite that the parties have signed, sealed, and delivered them on the date of execution, and they contain no language indicating that their effectiveness is subject to any condition precedent. Parol evidence is inadmissible to show the existence of a condition contrary to these recitals. Also see *Cobb Bank & Trust Co. v. Henry,* 246 Ga. 225 (271 SE2d 444) (1980).

2. Next, appellants contend that the settlement agreement, covenants not to sue, and the general release were void because they were procured by the appellees' fraudulent representations, discussed in Division 1, above, that they would be held in "escrow" until a later time.

"A party to a contract who can read must read or show a legal excuse for not doing so and ordinarily, if fraud is the excuse, it must be such fraud as to prevent the party from reading. *Martin v. Alford,* 214 Ga. 4, 7 (102 SE2d 598)." *Curtis v. First Nat. Bank of Commerce,* 158 Ga. App. 379, 381 (280 SE2d 404) (1981). In this case, there is no contention that Bass, who executed the documents for the other appellants, was fraudulently prevented from reading them. In fact, Bass' testimony shows beyond question that he carefully read and reread the documents before placing his signature thereon. The trial court correctly concluded that there was no jury issue concerning the

binding provisions of the settlement documents. See generally *Lakeview Memory Gardens v. Nat. Bank & Trust Co. of Columbus,* 155 Ga. App. 478 (3) (271 SE2d 219) (1980).

3. Appellee C&S Bank filed its answer to appellants' original complaint on January 31, 1979. On September 8, 1980, Citizens and Southern Financial Corporation (CSFC) (formerly known as Citizens and Southern Mortgage Company) assigned various notes and guarantees to appellee C&S Bank. The trial court, over objection, subsequently permitted C&S Bank to amend its counterclaim by adding claims based on these assignments. See OCGA §§ 9-11-13 (e) (Code Ann. § 81A-113); 9-11-15 (d) (Code Ann. § 81A-115). The appellants contend that these additional causes of action constituted compulsory counterclaims which C&S Bank was required to assert at the time it filed its original answer, because appellee C&S Bank and CSFC were not separate and distinct legal entities.

While CSFC is a wholly owned subsidiary of C&S Bank, that fact is not dispositive of the issue. See *Collins v. Booker,* 129 Ga. App. 824 (1) (201 SE2d 676) (1973). The record in the case shows that C&S Bank is a nationally chartered banking association, while CSFC is a separate corporation under the laws of Georgia. CSFC maintains separate by-laws, minutes, and records, files its income tax returns in its own name, maintains its own bank accounts and telephone listings, and advertises in its own name. To support his contention that the two entities are not in fact separate, Bass relies on representations allegedly made to him by officers of C&S Bank and CSFC to the effect that "there would be a particular advantage in dealing with the C&S entities because C&S Trust, C&S Bank, and C&S Mortgage (now CSFC) were, in fact, one entity."

"In deciding this case, we are faced with two, sometimes conflicting, maxims: on the one hand, great caution should be exercised when disregarding the corporate entity; on the other hand, when litigated, the issue of 'piercing the corporate veil' is for the jury. However, it is clear that the issue should not be submitted to the jury where there is no evidence that rises to the level sufficient to allow the corporate entity to be disregarded. [Cit.]" *Williams Plaza v. Sedgefield Sportswear,* 164 Ga. App. 720, 724 (297 SE2d 342) (1982).

In this case, there is no evidence that CSFC "was a sham, or that it was used to defeat a public convenience, to justify a wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of . . . [its] . . . separate entity." *Condenser Service &c. Co. v. Brunswick Port Auth.,* 87 Ga. App. 469, 475 (74 SE2d 398) (1953). See also *Fla. Shade Tobacco Growers v. Duncan,* 150 Ga. App. 34, 35 (256 SE2d 644) (1979). It follows that the trial court did not err in ruling that the causes of action in question

could not have been asserted by C&S Bank at the time it filed its original answer.

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 11, 1983 —

REHEARING DENIED OCTOBER 31, 1983 — 

*Thomas S. Bentley, Sanford R. Karesh, Edwin A. Tate II,* for appellants.

*John T. Marshall, David G. Ross, C. B. Rogers, Phillip S. McKinney, F. Carlton King, Jr., McChesney H. Jeffries, Jr., Albert Sidney Johnson, Harmon W. Caldwell, Jr.,* for appellees.