**Jimmy HEATON and Pauline Heaton, Plaintiffs,**

v.

**HOME TRANSPORTATION COMPANY, INC., et al., Defendants.**

**Civ. A. No. C85–4210A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 12, 1986.

James F. Barter, Jr., Mobile, Ala., for plaintiffs.

Michael Gillion, Richard H. Taylor, Mobile, Ala., Matthew D. Williams, Atlanta, Ga., Clint W. Sitton, Savannah, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This personal injury action arises from an accident involving a tractor-trailer rig on Georgia Highway 83 in Monroe County, Georgia. Jurisdiction of this court is predicated on diversity of citizenship, the amount in controversy exceeding ten thousand dollars. 28 U.S.C. § 1332. The case is currently before the court on (1) plaintiffs' motion for partial summary judgment, (2) defendants' motion for summary judgment, and (3) petitioner Home Insurance Company, Inc.'s motion to intervene.

**FACTS**

At the time of the accident in question, plaintiff, Jimmy Heaton, was operating a 1979 Kenworth tractor pursuant to a lease/purchase agreement with AAA Truck Lease & Sales, Inc., ("AAA"), entered into on January 30, 1984.

Plaintiff, Jimmy Heaton, was an owner/operator whose truck and services were leased to Home Transportation Company, Inc. ("Home"), under a contractor agreement with Home Transportation Company, Inc., dated January 31, 1984.

Defendant Home Transportation Company, Inc. is a motor common carrier engaged in the business of hauling freight and is subject to regulation by the Interstate Commerce Commission.

Plaintiff Jimmy Heaton entered a lease with Home whereby he agreed to supply exclusively to Home the use of his tractor and his services as a driver.

The plaintiff, Jimmy Heaton, was paid on a contract basis with no income taxes withheld by either Home or AAA.

Home purchased from Home Insurance Company, Inc. one employers' liability insurance policy number WC–99 86 33 which was effective for the period October 1, 1983 to October 1, 1984 and which provided workers' compensation coverage for Home employees. Plaintiff was insured under the above policy while driving for Home.

Under the lease/purchase agreement, AAA agreed to repair all items listed by plaintiff as needing repair on the 1979 Kenworth tractor and further agreed to put the vehicle in good, safe, and proper operating condition, the expense to be born by AAA. (Barrows Dep. at 12–14, 34, 35; Heaton Dep. at 67–68.)

AAA told the plaintiff to have the repair work performed at the Home Transportation Company, Inc., facility in Marietta, Georgia.

Employees of Home performed the brake work on the tractor, on behalf of AAA during the week of March 26, 1984 through March 31, 1984. AAA paid for the work pursuant to its agreement with the plaintiff.

On April 21, 1984, the plaintiff picked up a trailer owned by Home which was identified as number 442229. Plaintiff picked up the loaded trailer in Eight Mile, Alabama.

The plaintiff was injured in an automobile collision on April 23, 1984. The brakes on plaintiff's tractor-trailer truck failed to bring this truck to a stop. The trailer was owned by Home and the brakes repaired by employees of Home on behalf of AAA.

The brakes on the trailer number 442229 owned by Home Transportation Company, Inc., failed because all of the brakes on the trailer were out of adjustment. Plaintiff contends that the brakes were last adjusted at the Home Transportation Company, Inc., facility in Marietta, Georgia. Defendants deny this. The brakes failed on the 1979 Kenworth tractor because three of the four rear brakes on the tractor were out of adjustment (Affidavit of Bruce Benzies). The sole functioning brake on the tractor was the right brake on axle No. 3 *Id.* This brake was forced to bear the entire load of plaintiffs' tractor-trailer truck which resulted in its failure (Depken Dep. at p. 39).

According to Dr. Depken, the right rear brake drum broke apart due to faulty repair and maintenance work. Defendants contend that the work done on Jimmy Heaton's tractor by employees of Home on behalf of AAA was done correctly and Jimmy Heaton's tractor left those facilities with properly functioning brakes. (Affidavit of Theodore Dahlke).

Plaintiffs contend the condition of the brakes on the 1979 Kenworth tractor was a breach of the warranty, provided by AAA Truck Lease & Sales, Inc., that the front and rear brake systems were in proper and safe condition, and that breach resulted in injury to the plaintiffs.

Defendants counter that AAA warranted only to repair those items specifically listed by plaintiff and to otherwise place the truck in a safe operating condition (Barrows Dep. at p. 34; Heaton Dep. at p. 68). Defendants contend that plaintiffs have failed to allege that Jimmy Heaton specifically requested the repair of the front brakes and it is further shown the front brakes are not necessary for the safe operation of a tractor-trailer truck (Affidavit of Edward Wayne Clark; Depken Dep. at p. 70). Defendants further contend that a brake job was properly performed on Mr. Heaton's tractor and thus no breach has occurred (Affidavit of Theodore Dahlke).

Defendants contend that plaintiff Heaton improperly adjusted the brakes on his tractor subsequent to the last repairs on that tractor performed by any of the defendants' employees (Heaton Dep. at pp. 134; Affidavit of Bruce Benzies).

Jimmy Heaton has sought and received workers' compensation benefits under the employers' liability insurance policy purchased by Home for the injuries he sustained on April 23, 1984 (Exhibit "E" attached to Plaintiff's Brief in Support).

For purposes of his workers' compensation claim, Jimmy Heaton designated Home Transportation Company, Inc. as his em-

ployer. Jimmy Heaton has received over $24,000.00 in workers' compensation benefits as payments for medical expenses incurred for treatment of his injuries. (Defendant's Statement of Facts, ¶ 7).

Jimmy Heaton has received workers' compensation lost wage benefits totalling over $20,000.00 since the commencement of his disability on April 24, 1984. *Id.*

Jimmy Heaton continues to receive and accept weekly payments of $184.00 as workers' compensation benefits for his lost wages. *Id.*

Jimmy Heaton has actively sought all benefits available to him under the workers' compensation policy purchased by Home Transportation Company, Inc. and has accepted all benefits granted to him under this policy. *Id.*

AAA is a wholly owned subsidiary of Home (Affidavit of J. Michael Murphy; Affidavit of Charles Kilby).

AAA was operated for the purpose of recruiting owner-operators for use by Home *Id.* AAA made available to potential owner-operators used tractors which could be obtained by these drivers under a lease purchase agreement. *Id.*

As part of the arrangement with AAA, these drivers were also required to enter into an agreement with Home whereby their equipment and services were available exclusively to Home. *Id.*

AAA was under the exclusive control of Home. *Id.*

AAA and Home shared the same officers and directors. *Id.*

All management level positions for AAA were occupied by Home employees. *Id.*

A great majority of all managerial and administrative functions relative to the AAA operation were performed by Home personnel. *Id.*

All AAA payroll, personnel and corporate accounting functions were handled by Home employees. *Id.*

None of the administrative or managerial services provided to AAA by Home employees were charged back to AAA. *Id.*

AAA had no employees in its corporate offices located on the premises of Home in Marietta, Georgia. *Id.*

The offices of AAA were located at, and intermingled with that of Home and this space was provided to AAA without charge *Id.*

Home and AAA filed jointly a consolidated corporate tax return. *Id.*

All AAA employees were covered under the workers' compensation policy purchased by Home. *Id.*

All AAA liability insurance needs were covered under policies purchased by Home. *Id.*

All AAA employee benefits were provided under plans created and regulated by Home. *Id.*

All AAA employees were governed by the personnel regulations of Home. There were no separate regulations promulgated by AAA. *Id.*

AAA was operated as a department of Home and was not treated as a separate corporate entity. *Id.*

## DISCUSSION

■ Plaintiff, Jimmy Heaton, has brought this personal injury action for injuries allegedly caused by defendants' breach of their warranty that the trailer contracted to plaintiff was in good mechanical condition; defendants' negligence in repairing plaintiff's vehicle; and defendants' negligent breach of duty to properly inspect the trailer and failure to properly maintain the brakes on that trailer. Plaintiffs amended the complaint to include an action by plaintiff Pauline Heaton for loss of consortium.

Defendants have raised the affirmative defense that plaintiff's claims are barred pursuant to the Georgia Worker's Compensation law by virtue of plaintiff Jimmy Heaton's status as a "statutory employee" of defendant Home.

Under Georgia law, where the worker's compensation law is applicable, it provides the employee's exclusive remedy against his employer. *Freeman v. Ryder Truck Lines, Inc.*, 244 Ga. 80, 82, 259 S.E.2d 36 (1979) *cited in Swafford v. Transit Cas.*

*Co.,* 486 F.Supp. 175, 177 (1980). Indeed, application of the workers' compensation law excludes redress by lawsuit of all common-law rights including breach of contract. *Aetna Cas. & Surety Co. v. Davis,* 253 Ga. 376, 320 S.E.2d 368 (1984). If this court can say as a matter of law that the workers' compensation law covers all of plaintiff Jimmy Heaton's claims, then his suit would be barred by the function of Ga.Off'l Code Ann. § 34–9–11 (1982).

Defendants argue plaintiff is a statutory employee of the defendant Carrier and as such falls within the worker's compensation scheme. Plaintiffs maintain that Jimmy Heaton was a self-employed independent contractor and as such does not fall under the bar of Code § 34–9–11.

To increase safety to the public and guarantee financial responsibility for harms caused as a result of independent owner-operators contracting to carry freight for motor common carriers, Congress has required such carriers to:

... (3) inspect the motor vehicles and obtain liability and cargo insurance on them; and (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on Safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier....

49 U.S.C. § 11107 (West Supp.1986); *See also* 49 C.F.R. § 1057.12 (1985). The Interstate Commerce Commission has provided that the motor common carrier shall maintain exclusive control over any leased vehicles "to the extent necessary to insure the carrier's responsibility for the public's safety just as if the lessee-carrier were the owner of the vehicles." 49 U.S.C. § 304(e)(2); H.R.Rep. No. 2425, 84th Cong. 2d Sess. (1956), *reprinted in* 1956 U.S.Code Cong. & Admin.News pp. 4304, 4309.

Defendants argue that pursuant to these requirements, Home has included in its lease agreement with owner-operators the following provision:

Carrier shall have exclusive possession, control and use of contractor's equip-

ment and shall assume complete responsibility for the operation of the equipment for the duration of this agreement as required by the rules and regulations of the Interstate Commerce Commission, the Department of Transportation or other state, federal or local regulatory agency.

Defendant has produced evidence the Jimmy Heaton entered an agreement containing this language. Defendants' Brief in Support, Exhibit C, ¶ 4.

Courts have found that because the degree of control the carrier required under the statutory regime is tantamount to an employer/employee relationship, owner-operators driving for a motor common carrier under an equipment lease are "statutory employees" of that carrier. *White v. Excalibur Ins. Co.,* 599 F.2d 50 (5th Cir.1979) *cert. denied* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979). *See also Haygood v. Home Transportation Co., Inc.,* 244 Ga. 165, 259 S.E.2d 429 (1979), *Garrett v. Superior Trucking Co.,* 162 Ga.App. 558, 290 S.E.2d 528 (1982). Moreover, each of these courts have determined that the status of statutory employee applies in the workers' compensation context, including the statutory bar to private causes of action. *Id.* If the workers' compensation statute is applicable in all other respects, then the bar of Code § 34–9–11 precludes a cause of action by owner-operators against their carrier. Defendant argues from these cases that plaintiff Jimmy Heaton is barred from commencing a suit against defendants for injuries sustained during performance of the equipment lease agreement.

Plaintiff counters that defendants are not entitled to immunity based on the status of statutory employer because it did not maintain the required control over plaintiff in the performance of his job-related duties and because it did not pay for plaintiff's workers' compensation coverage. To overcome defendants' arguments, plaintiff points to various provisions contained in the contract between plaintiff Jimmy Heaton and Home to demonstrate only minimal control exercised by Home. However, the courts have found that the statutory

employer/employee relationship is a mandatory rule unalterable by contract. *White supra.* The court there found that in spite of a contract provision specifying that "[n]either the contractor nor its employees are to be considered as employee or employees of the carriers at any time, under any circumstances," the owner-operator there was nevertheless a statutory employee of the carrier. *Id.*

Plaintiffs also contend that because Jimmy Heaton paid his own workers' compensation insurance premiums, he is an independent contractor rather than a statutory employee. In *Garrett supra,* plaintiff had entered into a separate agreement with the carrier for a payroll deduction for his workers' compensation premium. The court found this fact did not alter plaintiff's status as a statutory employee for workers' compensation purposes. *See also Ratliff v. Liberty Mutual Ins. Co.,* 149 Ga.App. 211, 253 S.E.2d 799 (1979). Thus, the court finds that plaintiff Jimmy Heaton's status as a "statutory employee" establishes his eligibility under the Georgia Workers' Compensation scheme and bars him from suit pursuant to Ga.Off'l Code Ann. § 34–9–11.

■ Alternatively, plaintiff argues that if the court finds, as it has, that the "statutory employee" doctrine applies and bars plaintiffs' claim, it does so only with respect to the allegation of negligence arising out of defendant Home's repair of the trailer's brakes and not the negligent repair of the truck's brakes. Plaintiff contends that the former act of negligence arose from defendant Home's duties as an employer in supplying the trailer to plaintiff, which caused injuries in the performance of work-related activities. The latter act of negligence, plaintiff contends, did not arise out of the context of defendant Home's relationship with the plaintiff as his employer, but from the relationship of a party to whom the responsibility of repairing the truck's brakes had been delegated by defendant AAA.

Defendants counter there is no legal significance to the distinction plaintiff attempts to make between the alleged acts of negligence committed by Home. In essence, defendants argue that all plaintiffs' claims against Home which are grounded in tort are barred by Code § 34–9–11.

As previously noted by the court, the federal statutory regime of 49 U.S.C. § 11107 places a duty on common carriers to inspect the motor vehicles and see that they are operated in compliance with the laws. This duty arose from the statutory employer/employee relationship and not from the delegation of that responsibility by defendant AAA. Thus, Code § 34–9–11 bars each of plaintiffs' claims against defendant Home. The court, accordingly, GRANTS defendant Home's motion for summary judgment.

Plaintiffs have admitted that should the court conclude that plaintiff Jimmy Heaton's claims against Home are barred by the worker's compensation laws, then so to is plaintiff Pauline Heaton in her claim for loss of consortium. The court agrees. *Massey v. Thiokol Chem. Comp.,* 368 F.Supp. 668 (S.D.Ga.1973). Accordingly, the court GRANTS defendant Home's motion for summary judgment against plaintiff Pauline Heaton.

■ Lastly, defendant contends that the relationship between Home and AAA is sufficiently close that the court may disregard the corporate fiction separating these two entities and extend Home's Workers' compensation defense to AAA. Defendants would bear the burden of proving this defense at trial, and therefore, must show the court evidence that would be sufficient to prove this assertion at trial.

Georgia courts have held that "to establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." *Trans American Communications v. Nolle,* 134 Ga.App. 457, 214 S.E.2d 717 (1975) *cited in Kelley v. Austell*

*Bldg. Supply,* 164 Ga.App. 322, 297 S.E.2d 292 (1982).

Defendants show the court evidence that AAA was a wholly owned subsidiary of Home. May Affidavit ¶ 11; Kilby Affidavit ¶ 8. AAA was operated for the purpose of recruiting owner-operators for use by Home. *Id.* ¶ 12; ¶ 19. AAA was under the exclusive control of Home. *Id.* ¶ 14; ¶ 11. AAA and Home shared the same officers and the same directors. *Id.* ¶¶ 15–16; ¶¶ 12–13. All management level positions for AAA were occupied by Home employees. *Id.* at ¶ 17; ¶ 15. A great majority of all managerial and administrative functions relative to the AAA operation were performed by Home personnel. *Id.* ¶ 18; ¶ 16. All AAA personnel and payroll matters were handled by Home employees. *Id.* ¶¶ 19–20; ¶¶ 17–18. All AAA corporate accounting functions were handled by Home employees. *Id.* ¶ 21. None of these administrative services provided by Home employees were charged back to AAA. *Id.* ¶ 22, 20. The offices of AAA were located at and intermingled with that of Home. *Id.* ¶ 24; ¶ 25. The two entities jointly filed a consolidated corporate tax return. *Id.* ¶ 25; ¶ 26. In short, AAA was operated as a department of Home and was not treated as a separate corporate entity. *Id.* ¶ 30; ¶ 31.

On motion for summary judgment, where a movant carrying the burden of persuasion on an issue at trial has produced evidence sufficient to prevail on that issue, it is the nonmovant's burden to come forward with facts that create a jury issue, otherwise summary judgment is appropriate. Here, plaintiffs have failed to oppose the preceding evidence with any evidence whatsoever.[1] Instead, plaintiffs choose to challenge the validity of defendants' legal theory characterizing defendants' argument as "novel" and unsupported by settled case law. However, as defendants point out, this theory was recognized by the Georgia Court of Appeals in *Beck v.*

*Flint Construction Co.,* 154 Ga.App. 490, 268 S.E.2d 739 (1980).

In *Beck,* Latex Construction Company owned certain property which was utilized for the servicing and repair of Latex vehicles. Flint Construction Company was a wholly owned subsidiary of Latex. Flint occupied four offices as a tenant at the building at the same location. The plaintiff Beck was an employee of Latex. Beck was injured at this location when he picked up a blasting cap which he found lying on the ground. Beck received workers' compensation payments from Latex for his injuries. Beck then initiated a tort action against Flint. The facts established that Latex and Flint were two closely connected corporations. Specifically, the same individuals were officers and directors for both corporations. Equipment owned by Latex was frequently used by Flint on its jobs and employees for each company would do work for the other. The court concluded that Flint was nothing more than a non-rent paying tenant of Latex at the location. In spite of this, Beck argued that Flint, by virtue of its relationship with Latex, could be charged with the same degree of care to an invitee as was Latex for this location. The court recognized that Beck was in reality arguing that Flint was the alter ego of Latex for purposes of creating this duty to Beck. In rejecting Beck's argument, the court stated, "Beck encounters the problem that as the alter ego of the employer of Beck, Flint is immune from a common lawsuit for tort to the same extent as the employer, Latex." *Id.* at 493.

The undisputed facts establish that AAA and Home are indeed alter egos of each other, and therefore, the holding in *Beck* entitles AAA to the benefit of Home's immunity from suit under the Georgia workers' compensation law. The court, accordingly, GRANTS summary judgment in favor of defendant AAA.

This action renders moot plaintiffs' motion for partial summary judgment and petitioner Home Insurance Company, Inc.'s

---

**1.** Although taken individually these factors might not justify piercing the corporate veil as a matter of law, *see Trans-Am v. Nolle, supra; Williams Plaza, Inc. v. Sedgefield Sportswear,* 164 Ga.App. 720, 297 S.E.2d 342 (1982), however, taken together this overwhelming, undisputed factual evidence of unity is sufficient to warrant summary judgment on this issue.

motion to intervene. This action by the court terminates the case.