Antonio BROWN, Plaintiff,

v.

ADVANTAGE ENGINEERING, INC., Amoco Chemical Company, and Ardox Corp., Defendants.

ADVANTAGE ENGINEERING, INC., Third–Party Plaintiff,

v.

AMOCO CHEMICAL COMPANY, and Ardox Corp., Third–Party Defendants.

No. 1:87–CV–1165–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 22, 1990.

Thomas Charles Blaska, Robert A. Del-Bellos, Thomas C. Blaska & Associates, Atlanta, Ga., for plaintiff.

Donald M. Fain, Mark D. Belcher, Fain Major & Wiley, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the court on: (1) defendant Amoco Chemical Company's ("Chemical's") motion for summary judgment; (2) defendant Chemical's motion to bifurcate; (3) plaintiff's request for a separate trial on the alter-ego question; (4) defendant Ardox Corporation's ("Ardox's") motion for summary judgment, and; (5) defendant Chemical's request for oral argument on its motion for summary judgment. The court DENIES Chemical's and Ardox's motions for summary judgment and Chemical's motion to bifurcate. The court also DENIES Chemical's request for oral argument on its motion for summary judgment and plaintiff's request for a separate trial on the alter-ego question.

## FACTS

This is a personal injury action arising from the explosion of an oil heating machine manufactured by Advantage and containing a pump made by Ardox. The machine exploded while heating "injection molds" at Amoco Torlon Products' (Torlon's) plant in Atlanta, Georgia on July 30, 1986. The explosion severely injured plaintiff Antonio Brown.

In 1984, Advantage sold three Temptender 450 oil heating machines to Chemical. The units contained cast-iron pumps manufactured by Ardox. The units also contained safety switches designed to automatically turn off the units if their heating cavities attained temperatures higher than those registered at the temperature controls.

Chemical placed the machines in its research and development facility in Naperville, Illinois. Chemical planned to use the machines to circulate heat through special molds in which a "high performance polymer compound" called torlon would be formed into various "usable components." Amoco Chemical Company's Brief in Support of Motion for Summary Judgment (hereinafter "Chemical Brief") at 1–2. According to plaintiff, Chemical used inadequate connector lines to connect the units to the molds. Plaintiff's Brief in Opposition to Defendant Amoco Chemical Company's Motion for Summary Judgment (hereinafter "Plaintiff's Opposition to Chemical") at 2.

Chemical created the "Torlon Group" to begin production of torlon components. "The Torlon Group operated under the exclusive direction and control of Amoco Chemical as a department of that corporation." Chemical Brief at 2. During the entire time that the Torlon Group was based in Naperville, Amoco Corporation provided all maintenance and repair work on its equipment, including the Temptender 450 that caused plaintiff's injuries. Mr. Bill Tucker was the primary Amoco Corporation employee charged with maintaining the Torlon Group equipment. According to plaintiff, the Advantage oil heating ma-

chines were inadequately maintained. Plaintiff's Opposition to Chemical at 3.

Near the end of 1985, Chemical determined that the Torlon Group had outgrown the Naperville plant and leased a new production facility in Atlanta, Georgia. On February 7, 1986, the Torlon Group was incorporated as Amoco Torlon Products, Inc. All of Torlon's stock was owned by Amoco Chemical Holding Company ("Holding"), itself wholly owned by Chemical.

In late March and early April of 1986, Chemical had a substantial amount of the equipment in Naperville, including the Temptender 450 that injured plaintiff, shipped to the Atlanta facility. The equipment was set up at Torlon exactly as it was at Chemical. Plaintiff's Opposition to Chemical at 4. Chemical employees trained the new Torlon employees to use the torlon production equipment. *Id.* Torlon hired plaintiff on May 27, 1986.

On July 30, 1986, one of the Advantage heating units exploded at the pump, spewing hot oil on plaintiff and causing serious injuries. A subsequent inspection of that unit, as well as of the two other Advantage machines, revealed that their high-temperature safety switches had been electronically bypassed. Plaintiff alleges that the absence of these safety switches, Chemical's negligent maintenance and installation of the unit, as well as its inherent defects, caused the machine to overheat and explode. Plaintiff's Opposition to Chemical at 4.

Plaintiff filed for and received workers' compensation benefits from Torlon. He brings this action against Chemical, Advantage and Ardox. Advantage has filed a third-party complaint for indemnity and contribution against Chemical and Ardox. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

## DISCUSSION

### I. Standard of Review

This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. Tech-South, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511. Similarly, an act is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *Rollins*, 833 F.2d at 1528.

### II. Chemical's Motion for Summary Judgment

#### A. *The Alter–Ego Question*

According to O.C.G.A. § 34–9–11, workers' compensation, when available, is an

employee's exclusive remedy against his employer or its alter-ego. *See Heaton v. Home Transportation Co.,* 659 F.Supp. 27 (N.D.Ga.1986) (Hall, J.) (workers' compensation defense extends to employer's alter-ego). Chemical argues that it is immune from plaintiff's lawsuit because at the time of his injury, it was the alter-ego of his employer, Amoco Torlon.

■ To begin, the court recognizes that the alter-ego inquiry is a question of fact that the jury should ordinarily decide. *Najran Co. v. Fleetwood Enterprises, Inc.,* 659 F.Supp. 1081, 1096 (S.D.Ga.1986). The court may decide this matter on a motion for summary judgment only if the movant proves that "no reasonable jury" could find corporate separateness. *Id.* at 1097; *Heaton,* 659 F.Supp. at 31 (party asserting alter-ego defense bears burden of proof).[1] Moreover, "great caution should be exercised when disregarding the corporate entity." *Najran,* 659 F.Supp. at 1096 (quoting *Bass v. Citizens & Southern National Bank,* 168 Ga.App. 668, 670, 309 S.E.2d 850, 852 (1983)).

■ The *Najran* court correctly characterized Georgia law as providing a "two-pronged" test for determining the alter-ego question: [1] the subsidiary must be a "mere instrumentality of the parent, [so] 'that the separate personalities of the corporation and the owners no longer exist; and [2] to adhere to the doctrine of corporate entity would promote injustice or protect fraud.'" *Najran,* 659 F.Supp. at 1095 (quoting *Florida Shade Tobacco Growers, Inc. v. Duncan,* 150 Ga.App. 34, 34–35, 256 S.E.2d 644, 644 (1979)); *see also Trans-American Communications, Inc. v. Nolle,* 134 Ga.App. 457, 214 S.E.2d 717 (1975).

Cases applying Georgia law, however, appear to disagree as to whether the "first prong" of the alter-ego test requires the proponent of piercing the corporate veil

("piercer") to prove abuse of the corporate form. Arguing that such proof is necessary, plaintiff and Advantage cite numerous cases, including *Amason v. Whitehead,* 186 Ga.App. 320, 322, 367 S.E.2d 107, 108 (1988), which plainly states that "[t]here must be evidence of abuse of the corporate form." *Amason* appears to derive this proof requirement from the proposition that "'[t]he concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.'" 186 Ga.App. at 321, 367 S.E.2d at 108 (quoting *Jenkins v. Judith Sans Internationale, Inc.,* 175 Ga. App. 171, 171, 332 S.E.2d 687, 688 (1985)). According to plaintiff and Advantage, Chemical has failed to prove such abuse and is thus not entitled to summary judgment as the alter-ego of Torlon.

Chemical, however, relies on *Heaton,* in which this court granted summary judgment in favor of the "piercer" without proof of such abuse. This court found that the "piercer's" uncontested evidence of "non-abusive" corporate unity justified granting summary judgment in its favor. *Heaton,* 659 F.Supp. at 33. *See also Najran,* 659 F.Supp. at 1096–97 ("piercer" prevailed on summary judgment motion without proof of abuse). Chemical argues that when a parent corporation is attempting to pierce the corporate veil of its own subsidiary (as was the case in *Heaton*), requiring proof of abuse would be unfair and illogical.[2]

■ The court need not choose between these two standards because even if Chemical did not have to show that it abused the corporate form, it fails to prove that "no reasonable jury" could find corporate separateness. The court acknowledges that Chemical has offered significant evidence

---

1. The *Najran* court based this standard on the fact that "'[t]he "genuine issue" summary judgment standard is very close to the "reasonable jury" directed verdict standard.'" 659 F.Supp. at 1097 n. 6 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

2. The court notes, however, that the Georgia Court of Appeals has required a shareholder to prove such abuse when attempting to pierce the veil of his own corporation. *See, e.g., Hogan v. Mayor & Aldermen of Savannah,* 171 Ga.App. 671, 320 S.E.2d 555 (1984).

of an alter-ego relationship. For instance, most all of Torlon's Officers and Directors held similar high-level positions at Chemical. Chemical also owns 100% of Torlon's stock, albeit through Amoco Chemical Holding Company, an intermediate subsidiary which is also wholly owned by Chemical. Moreover, Chemical provided extensive administrative and managerial assistance to Torlon throughout the period in question.

Unlike the plaintiffs in *Heaton*, however, plaintiff and Advantage have offered evidence to counter Chemical's proof of corporate unity. For example, even though Chemical provided substantial administrative services for Torlon, it "charged back" the value of those services to Torlon. The *Heaton* court found the absence of such a "charge back" system to be crucial evidence of corporate unity. 659 F.Supp. at 33; *see also Amason*, 186 Ga.App. at 321, 367 S.E.2d at 108 ("charge back" or reimbursement for stockholder's services is evidence of corporate separateness).[3] Plaintiff and Advantage also emphasize that Chemical itself does not own any Torlon stock. Only Amoco Chemical Holding owns that stock and Chemical has admitted that Holding is a separate and distinct corporate entity. Plaintiff and Advantage argue that this corporate structure reveals that Chemical intended to adhere to corporate formalities and maintain an arms length relationship with Torlon.

Plaintiff and Advantage also offer evidence that Torlon and Chemical maintained separate sets of financial records. Plaintiffs Ex. D–3 and D–14. According to plaintiff's accounting expert, Richard E. Jones, Torlon used its separate financial records as the basis for filing its separate, unconsolidated tax returns in Georgia.

Jones Aff. at ¶ 16; Plaintiff's Ex. D–19; *compare Heaton*, 659 F.Supp. at 33 (parent and subsidiary jointly filed consolidated tax returns). Torlon also filed its own property tax return in Fulton County, Georgia, and obtained its own Georgia business license. Plaintiff's Ex. AA and CC.

Moreover, Chemical did not include Torlon as part of its "unitary group" in its 1986 Kansas or California tax returns. Plaintiff's Ex. D–20.[4] These states treat operationally related but legally separate entities as one "unitary group" for income tax purposes. *See Pioneer Container Corp. v. Beshears*, 235 Kan. 745, 684 P.2d 396 (1984); *Hugo Neu–Proler International Sales Corp. v. Franchise Tax Board*, 195 Cal.App.3d 326, 240 Cal.Rptr. 635 (2d Dist.1987). "In tax law the concept of unitary business arises when a corporation has one or more subsidiaries or divisions which are dependent to or upon, or contribute to the parent corporation or other subsidiaries or divisions so, in essence, to constitute a homogenous enterprise." *Pioneer*, 684 P.2d at 398. This evidence indicates that Chemical and Torlon, unlike the parent and subsidiaries in *Najran*, dealt with third parties as separate entities. 659 F.Supp. at 1096–97.

The court need not elaborate on the scores of other facts relevant to first prong of the alter-ego test at this time. The foregoing facts amply demonstrate that Chemical has not shown "such [a] complete lack of independence, and total nonexistence of the normal indicia of corporate separateness" between itself and Torlon "that 'no reasonable jury' could find that [Chemical] has failed to carry its burden with respect to the first prong of the alter ego test." *Id.* at 1097.

---

**3.** Chemical argues that because "no consideration changed hands as a result of" these "paper" charge backs, the charge back system provides no evidence of corporate separateness. Chemical Reply at 9. The testimony of plaintiff's expert Richard E. Jones, however, indicates that the "charge back" system that Chemical used "to transfer transactions to or from [Torlon] was the same system used by it to transfer transactions to or from other related companies.... [including] transactions between itself and its own parent company [Amoco Corporation]."

Jones Aff. at ¶ 14. Even if no consideration changed hands, Chemical's use of this standard "charge back" system evidences strict adherence to established corporate formalities that could influence a "reasonable jury" to reject its claim of corporate unity.

**4.** Chemical did, however, include numerous other "affiliates," such as Amoco Container Co., Amoco Enterprises, Inc., and Amoco Fabrics and Fibers Co. Plaintiff's Ex. D–20.

As to the second, "equitable," prong of the alter-ego test, Chemical has failed to prove that it would, as a matter of law, suffer injustice if Torlon was recognized as an independent corporate entity. Chemical's primary equitable argument is that "if the tables were turned and Amoco Chemical were (sic) attempting to deny alter ego status in order to avoid liability for Amoco Torlon actions, Amoco Chemical would certainly be unsuccessful." Chemical Brief at 29. But clearly, if the tables were so turned, Chemical would point to cases like *Amason* and argue that plaintiff must show abuse of the corporate form. The court finds it unlikely that Chemical could not get past summary judgment in such a situation.

The court also disagrees with Chemical's "equitable" argument that it ended up paying plaintiff's workers' compensation claim on behalf of Torlon. First, Torlon claimed the chargeback for plaintiff's claim as a deduction on its 1987 tax return. Statement 1 to Plaintiff's Ex. D–23. Second, plaintiff offers evidence to show that if any third party paid this claim for Torlon, it was Amoco Corporation, not Chemical. Jones Aff. ¶ 12. A genuine issue of material fact exists as to whether Chemical actually paid plaintiff's workers' compensation claim.

The court therefore finds that Chemical has failed to prove that it was, as a matter of law, the alter-ego of Torlon at the time of plaintiff's injury.

**5.** Such entities are entitled to tort immunity because O.C.G.A. § 34–9–8 makes them vicariously liable for workers' compensation claims to the same extent as immediate employers. This scheme was thus designed to ensure that employees of subcontractors are covered by workers' compensation. *Wright Associates*, 247 Ga. at 499, 277 S.E.2d at 43–44.

**6.** Chemical also argues that *Collins v. Sheller–Globe Corp.*, — Ga.App. —, — S.E.2d —, Case No. A89A2096 (Jan. 18, 1990) holds that a parent corporation is automatically the statutory employer of its subsidiary's employees. This argument is without merit. Although the *Collins* court mentions in its opinion that the plaintiff argued, on appeal, that a question of fact existed regarding statutory employer, the defendant obtained summary judgment on the

**B.** *Statutory Employer*

Chemical also argues that it "is immune from suit by virtue of its potential and actual liability in 1986 for payment of workers' compensation claims made upon Amoco Torlon." Chemical Brief at 32. Chemical cites *Wright Associates, Inc. v. Rieder*, 247 Ga. 496, 277 S.E.2d 41 (1981), for the proposition that "where an entity other than the immediate employer is potentially liable for payment of workers' compensation benefits, that entity should enjoy immunity from suit." Chemical Brief at 32. Chemical argues that this immunity is "derivative of the immunity enjoyed by a statutory employer." *Id.*

Plaintiff and Advantage correctly argue, however, that *Wright* does not extend statutory employer immunity to "any potentially liable entity" but only to entities that fall within the definition of statutory employer provided in O.C.G.A. § 34–9–8; namely, principal contractors. *See Wright*, 247 Ga. at 497, 277 S.E.2d at 43; *see also Manning v. Georgia Power Co.*, 252 Ga. 404, 314 S.E.2d 432 (1984) (to obtain tort immunity, defendant must be principal contractor under § 34–9–8); *Modlin v. Black & Decker Manufacturing Co.*, 170 Ga.App. 477, 317 S.E.2d 255 (1984) (same).[5] Because Chemical has neither proven nor alleged that it is a "principal contractor," it enjoys no tort immunity as plaintiff's statutory employer.[6]

Nor does Chemical enjoy any immunity "derived from" the statutory employer doctrine. First, even if the law recognized

defense that it was the plaintiff's *actual*, not statutory, employer. As plaintiff in this case correctly notes, "the [*Collins*] court's citation to *Harvey v. Fine Products Co., Inc.*, 156 Ga.App. 649, 275 S.E.2d 732 (1980), an alter-ego case, and the absence of any discussion or citation to any authority dealing with statutory employer, clearly indicate that the decision could not have been based upon statutory employer." Plaintiff's Brief in Opposition to Chemical's Motion for Leave at 2. This court disagrees with Chemical's contention that the *Collins* court, without reference to O.C.G.A. § 34–9–8 or any statutory employer cases, created a new definition of statutory employer that effectively overrules its own decision in *Modlin* and fails to follow the Georgia Supreme Court's decision in *Manning*.

such immunity, plaintiff has created a factual dispute as to whether Chemical actually reimbursed the named insured Amoco Corporation for payment of plaintiff's workers' compensation claim. *See supra.* And second, Chemical cites no authority that recognizes such "derivative statutory employer immunity." As plaintiff and Advantage note, Chemical's theory bears some resemblance to the immunity that O.C.G.A. §§ 34–9–1(3) and 34–9–11 afford to workers' compensation insurers. The Georgia Supreme Court, however, has held that such immunity is available only to actual insurers; it is not available to a party simply by virtue of its obligation to indemnify a named insured for payment of workers' compensation claims. *George v. Ashland–Warren, Inc.,* 254 Ga. 95, 97, 326 S.E.2d 744, 745–46 (1985). Chemical is therefore not entitled to tort immunity as a result of its alleged potential and actual liability for plaintiff's workers compensation claim.

### C. *Independent Contractor*

■ Chemical's final argument assumes that William Tucker proximately caused plaintiff's injury by bypassing the machine's safety switches. Chemical then argues that Mr. Tucker was only an independent contractor whose actions cannot be attributed to Chemical. Consequently, Chemical argues, plaintiff has no factual basis for his claims against Chemical.

Significant evidence indicates that Mr. Tucker bypassed the machine's safety switches. *See, e.g.,* Hamilton Dep. at 60–63 (testifying that Mr. Tucker "fixed" his machine so that it no longer cut off at 400 degrees). Mr. Tucker, however, has denied bypassing the safety switches. Tucker Dep. 8/22/89 at 14. Moreover, Mr. Tucker testified that researchers employed by Chemical were able to, and often did, modify their machines. *Id.* Because issues of fact exist regarding the proximate cause of plaintiff's injury, particularly with respect to the role of Mr. Tucker, the court need not examine whether Mr. Tucker was an independent contractor or merely a borrowed employee. *See also infra* (discus-

sion of proximate cause with regard to Ardox's motion for summary judgment).

For all of the forgoing reasons, the court DENIES Chemical's motion for summary judgment.

### III. Chemical's Motion to Bifurcate

Pursuant to Fed.R.Civ.P. 42(b), Chemical moves to bifurcate the trial on the issues of liability and damages, arguing that bifurcation would promote judicial economy and prevent prejudice. Plaintiff and Advantage oppose Chemical's motion. Plaintiff also requests the court to separately try the alter-ego question, regardless of whether it grants Chemical's motion to bifurcate.

"The decision to grant or deny a motion for separate trials on the issue of liability and damages is committed to the sound discretion of the court." *Beauchamp v. Russell,* 547 F.Supp. 1191, 1199 (N.D.Ga. 1982) (Freeman, J.). In making that decision, the court considers the following factors: "whether separate trials will be conducive to expedition of the litigation and to efficient judicial administration, whether separate trials will avoid prejudice, and whether the issues sought to be tried separately are significantly different." *Id.* And as the Advisory Committee Note to Rule 42(b) states, "separation of issues for trial is not to be routinely ordered." *See also Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978) (pursuant to Advisory Committee Note, "we disapprove of a general practice of bifurcating all negligence cases").

■ Having considered these factors, the court will not hold separate trials on the issues of liability and damages. With respect to judicial economy, Chemical argues that a separate liability trial will likely eliminate the need for a trial on damages: "Should the jury resolve the liability issues in favor of the Plaintiff, this case may very well settle at that time.... should the jury find in favor of the Defendant, there would be no need to proceed with a jury trial on the damages issue." Brief in Support of Motion to Bifurcate at 4.

As of now, however, Chemical has shown no interest in settlement, and a jury determination of liability would give plaintiff little incentive to accept such an offer. Moreover, Chemical's observation that a jury determination of no liability would eliminate the need for a trial on damages is true in any negligence case—it does not advance the cause of bifurcation. Finally, both plaintiff and Advantage assert that separate trials would require them to recall several out-of-state witnesses, indicating that bifurcation would actually inhibit, rather than promote, efficient judicial administration. The need to recall these witnesses also indicates that the issues of liability and damages are not significantly different. *See Beauchamp*, 547 F.Supp. at 1199.

With respect to prejudice, Chemical argues that plaintiff's extensive injuries "hold[ ] a definite potential to adversely and improperly affect a jury's fair, impartial and objective consideration of the liability issues." Brief in Support of Motion to Bifurcate at 5. This reasoning, however, would support bifurcation in any negligence action brought by a sympathetic plaintiff. The court is confident that with the aid of cautionary instructions, a jury will be able to fairly and impartially determine both liability and damages in a single trial. The court therefore DENIES Chemical's motion to bifurcate.

■ The court also DENIES plaintiff's request for a separate trial on the alter-ego question. The court finds that plaintiff's proposed trial scheme would neither promote judicial economy nor prevent undue prejudice.

IV. Ardox's Motion for Summary Judgment

■ Ardox argues that it is entitled to summary judgment because: (1) the pump was not defective as sold; and (2) even if defective, the design or condition of the pump did not proximately cause the accident. The court finds, however, that plaintiff, Advantage and Amoco have presented evidence sufficient to create genuine issues of material fact with respect to both of these grounds.

In response to Ardox's assertions that the pump was not defective as sold, plaintiff offers the testimony of Gordon Whitaker, a forensic engineer. Mr. Whitaker identifies two problems with the pump. First, he testifies that Ardox should not have made the pump from cast iron. Whitaker Dep. 7/26/89 at 62. "[C]ast iron shouldn't be used in a temperature that high. It shouldn't be used on flammable oil. And the cast iron will fail precipitously without warning." *Id.* He cites industry literature to support his opinion. *Id.* at 62–63. Instead, he states that Ardox should have used cast steel. *Id.*

Second, Mr. Whitaker testifies that Ardox should have used significantly longer machine screws to attach the pump housing. *Id.* at 98–99. According to Mr. Whitaker, use of shorter screws concentrated stress at the point of engagement and made the pump less able to withstand pressure. *Id.* at 93–94. Another expert witness, James W. Donnelly, offers almost identical testimony. Donnelly Dep. 3/3/89 at 67. The testimony of both of these witnesses creates genuine issues of material fact with respect to the design of the pump.

Ardox also moves for summary judgment on the ground that the design or condition of the pump did not proximately cause the accident. Ardox argues that the alleged alteration of the heating unit by Amoco (either Chemical or Corporation, see *supra*) was the sole cause of plaintiff's injuries.

■ To begin, the court notes that issues of proximate cause are best left to the jury. *Dornton v. Darby*, 373 F.2d 619, 621 (5th Cir.1967).[7] Moreover, a court may determine the question of proximate cause as a matter of law only "where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the

---

**7.** Fifth Circuit cases decided before October, 1981 are binding on courts in this circuit. *Bon-* *ner v. City of Prichard,* 661 F.2d 1206, 1210 (11th Cir.1981).

proximate cause of the injury." *Union Carbide Corp. v. Holton*, 136 Ga.App. 726, 729, 222 S.E.2d 105, 109 (1975).

Here, the court must submit the question of proximate cause of the jury because Chemical has introduced evidence indicating that the alleged alteration of the heating unit was not a cause in fact of the accident. Rinker Dep. 1/11/89 at 90–91. And because an injury can have more than one proximate cause, *Eubanks v. Business Equipment Center of Atlanta*, 161 Ga. App. 202, 203, 288 S.E.2d 273, 274 (1982), the jury could find that both the bypassing of the safety switches and the design and manufacture of the pump proximately caused plaintiff's injuries.

Because there are issues of material fact as to the existence of design defects in the Ardox pump and as to the question of proximate cause, the court DENIES Ardox's motion for summary judgment.

## CONCLUSION

The court DENIES Chemical's and Ardox' motions for summary judgment and Chemical's motion to bifurcate. The court also DENIES Chemical's request for oral argument on its motion for summary judgment and plaintiff's request for a separate trial on the alter-ego question.

So ORDERED.